The State ex rel. Jones v. Laughlin.

THE STATE *ex rel.* JONES V. LAUGHLIN.

1. **Attorneys:** POWER TO DISBAR. The St. Louis criminal court has no power to disbar an attorney or to suspend him from practice. This power is vested by statute in the Supreme Court, the St. Louis court of appeals and the several circuit courts only.

2. **The word** "may," when used in a statute, is to be held as meaning "shall" whenever the statute relates to a power conferred on public officers concerning the public interests and the rights of third persons, who have a claim *de jure* that the power shall be exercised for the sake of justice and the public good.

*Prohibition.*

*Nathaniel Holmes* for relator.

The St. Louis criminal court has no jurisdiction of a charge of this nature. R. S. 1879, § 482. The power to license attorneys is specially limited to the superior courts, and this is by necessary implication exclusive of all other and inferior courts and courts of special and limited jurisdiction. The license of relator obtained under this statute expressly authorizes him to practice law in any court of record in this State, and so of course in the St. Louis criminal court, and is a valuable franchise and vested right of the nature of property of which he cannot be deprived but by the judgment of a court of competent jurisdiction in the exercise of the judicial power conferred upon it. *Ex Parte Garland,* 4 Wall. 397; *Cummings v. State,* 4 Wall. 277. By the same statute, the same three superior courts, and none others, are vested with power to remove or suspend licensed attorneys for unprofessional conduct. This jurisdiction is exclusive in the superior courts. The word

" may," as used in sections 488 and 489 of this statute, is to be interpreted " shall." 42 Mo. 175; 48 Mo. 178. This construction of the statute does not take away or abridge the power of the criminal court to punish for contempt, for this power embraces only conduct of a personal character affecting the court itself or the judge thereof, *e. g.*, personal disrespect to the court, (*Secombe's case* 19 How. 12;) notorious bad character and unfitness to practice law, (*Mill's case*, 1 Mich. 193;) gross personal attack upon the judge, (*Beene v. State*, 22 Ark. 149; *Jackson v. State*, 21 Tex. 688; *State v. Chapman*, 11 Ohio 430; *Austin's case*, 5 Rawle 209; *Bradley v. Fisher*, 13 Wall. 356). No charge of this kind is made against this relator.

*R. S. McDonald* also for relator.

*John A. Harrison* for respondent.

1. Every court of record has, without statutory provision, power to control its officers. This power is inherent and is necessary for the protection of courts. In its exercise it may strike from the roll of attorneys any name which, by virtue of that power, it has allowed to be placed there. *In re Bowman*, 8 Cent. L. J. 250; *State v. Garesche*, 36 Mo. 256; *Rice v. Commonwealth*, 18 B. Mon. 472; *Dickens' case*, 67 Pa. St. 169; *s. c.*, 5 Am. Rep. 420; *Strother v. State*, 1 Mo. 605; *State v. Watkins*, 3 Mo. 480; *State v. Foreman*, 3 Mo. 602; *In re Mills*, 1 Mich. 392; *Randall's case*, 11 Allen 472.

2. The St. Louis criminal court is only an inferior court, in that its jurisdiction is limited to a certain class of cases pointed out by law. Like United States courts, as to all matters over which it has power, its jurisdiction is general. These courts have power to strike from the rolls without the aid of any statute. Bacon's Ab., Title Attorneys, H; *Merritt v. Lambert*, 10 Paige 356; *In re Martin*, 6 Beav. 237; *Ex Parte Brown*, 1 How. (Miss.) 303; *Ex Parte Bradley*, 7 Wall. 364, 374; *Ex Parte Robinson*, 19

Wall. 505, 513; *Ex Parte Garland*, 4 Wall. 378; *Ex Parte Burr*, 2 Cranch C. C. 230; *Ex Parte Secombe*, 19 How. 9; *Wright v. Marsh*, 2 Greene (Iowa) 94.

3. The statute in relation to disbarment does not restrict the general power of courts over their attorneys. *In re Bowman, supra*; *Beene v. State*, 22 Ark. 149; *State v. Chapman*, 11 Ohio 430; *In re Mills, supra*; *Ex Parte Brown, supra*; *Jackson v. State*, 21 Tex. 668. The intention was to provide a convenient proceeding, a judgment in which should be conclusive throughout the State, and which might be set on foot by any one aggrieved. The statute was passed for the benefit of the courts and parties who might have cause to proceed against attorneys, and not in any way to grant attorneys themselves immunity from common law proceedings. Legislative enactments should not be construed as restrictive of the inherent powers of courts, unless the intention to so restrict them clearly and unmistakably appears from the act. *Crisp v. Banbury*, 8 Bing. 394; Potter's Dw. on Stat., (Ed. 1878) 259; *State v. St. Louis Co. Ct.*, 38 Mo. 402; *Commonwealth v. Hudson*, 11 Gray 65; *Gould v. Hays*, 19 Ala. 450; *Case v. Fishback*, 10 B. Mon. 40; *Wright v. Marsh*, 2 Greene (Iowa) 94; Story's Eq. Jur., § 80. No such intention appears in this case. On the contrary, the use of the word "may" in sections 488 and 489, Revised Statutes, would seem to indicate that the statutory proceeding was not intended to be exclusive of other modes of procedure. The word "may" is here used in its ordinary sense, and is permissive only.

SHERWOOD, C. J.—The return of the respondent is substantially this: That having reason to believe, from facts that appeared in evidence before him, that relator, who is an attorney of the St. Louis criminal court, had been guilty of duplicity toward the court, and of willfully abusing its process, and that he had thereby caused a great and needless expense in the trial of a certain cause in said court, the respondent, as judge of said court, of his own motion,

caused · relator to be cited to appear before the bar of said
court on the 20th day of December, 1880, at 10:30 a. m., and
then and there show cause why the name of relator should
not be stricken from the rolls of said court and relator be
precluded from further practicing his profession as an at-
torney of said court; that respondent caused witnesses to
be summoned for a thorough investigation of the matter;
that an investigation was had, and that the matter is now
held by respondent under advisement; that respondent
proposes to proceed to determine, from the evidence, the
guilt or innocence of relator, and that if he finds relator
guilty, he will, unless prohibited by this court, enter an
order for his punishment. Respondent pleads his juris-
diction as judge of said court as a bar to the granting of
the writ prayed for.

The only point requiring examination is the jurisdic-
tion of the St. Louis criminal court to proceed as it has
done, and intends doing, in the premises. There is no
doubt of the power of a court of general and common law
jurisdiction, for good cause, to disbar or strike from its
rolls any attorney of such court. This power exists at
common law, independent of statutory aid; exists as a
power inherent in courts of that description. Abundant
authority supports this position.

Owing however, to the view we have taken of this
case, we deem it unnecessary to enter at large upon the
discussion of the very grave question whether the legisla-
ture may, in the exercise of its constitutional functions, so
far trench upon the ancient authority of courts possessed
of general and common law jurisdiction, and upon the au-
thority of those established by the organic law itself, as to
limit the means, lessen the methods and curtail the grounds
by which and for which the members of the bar of such
courts are to be deprived of the privilege of practicing
therein. That there is, in this regard, some limit, some
undefined boundary beyond which even the legislative will
becomes powerless, can but be obvious to every one who

reflects for a moment on the triune system of our State government, on the divisions of its powers "into three distinct departments—the legislative, the executive and the judicial"—and upon the express prohibition against either of such departments exercising "any power properly belonging to either of the others," except where our constitution "expressly directs or permits." Const. of Mo., art. 3. These remarks are merely prefatory to the consideration of the precise question this record presents, which, as before stated, is, whether the St. Louis criminal court had authority to act in the premises.

## I.

We are relieved from discussing the foregoing point as to the extent of the legislative powers in respect to courts of general and common law, or constitutional jurisdiction, because not regarding the court, whose action we are asked to restrain, as possessed of such an enlarged jurisdiction as that just mentioned. "The St. Louis criminal court" is a court of purely statutory origin, having been created by the act of the legislature, approved November 29th, 1855. It is a court, also, of inferior and limited jurisdiction, that jurisdiction being confined to criminal causes alone arising within the limits of the city of St. Louis, or else coming to such court by change of venue. R. S., Appen., 1507. This court, being the mere creation of the legislature, owing its origin as well as its jurisdiction and powers to the legislative will, it was clearly competent for the legislature to enlarge or restrict those powers, or to abolish the court altogether. This point was so ruled as to courts of common pleas, in reference to which courts section 5 of the Schedule provides that they "shall continue to exist and exercise their jurisdiction until otherwise provided by law." State v. Brown, 71 Mo. 454. Similar language is used as to criminal courts in the preceding section of the Schedule, and section 23, article 6 of the constitution recognizes all criminal courts, as well as county courts, probate courts,

municipal corporation courts and justices' courts as inferior
courts, and places them under the superintending control
of the circuit courts "in each county in their respective
circuits." The power of the legislature as to these courts
of statutory origin has on former occasions been frequently
and broadly asserted by this court. *Harper v. Jacobs,* 51
Mo. 296; *Ross v. Murphy,* 55 Mo. 372; *Smith v. Guerant,*
55 Mo. 584.

The rule in regard to these courts of inferior and lim-
ited jurisdiction is well established, that they take nothing
by implication, and can only exercise such powers as the
legislature has expressly conferred. That no power to
disbar an attorney or strike his name from the rolls has
been thus expressly conferred on the St. Louis criminal
court must be admitted. And even if it be said that the
1st and 2nd sections of the law organizing that court are
sufficiently comprehensive to confer the power claimed—a
position we do not admit—it cannot escape observation
that the concluding portion of section 2 subjects the power
conferred on that court to the "provisions of the laws of
this State." Among these provisions thus referred to are
those relative to the suspension or removal of an attorney
because "guilty of felony, or infamous crime, or improp-
erly retaining his client's money, or of any malpractice,
deceit or misdemeanor in his professional capacity."
The grounds on which the disbarment of relator is bot-
tomed are, if sufficiently specific, comprehended within the
statutory provisions above noted, since they evidently relate
to "malpractice, deceit or misdemeanor in his professional
capacity." But in relation to grounds of this nature, the
legislature has specifically provided that an attorney may
be suspended or removed from practice upon such "charges
being exhibited and proceedings thereon had in the Su-
preme Court, the St. Louis court of appeals or the circuit
court." By thus pointing out the particular courts in which
the proceedings are to be instituted for the suspension or
disbarment of attorneys, the legislature evidently intended,

and in fact has said, that courts, other than those mentioned, should possess no power of suspension or removal for any of the grounds set forth in the statute. "Affirmative specification excludes implication;" the expression of one thing is the exclusion of another. Dwarris on Stat., 605, and cases cited; *Ex Parte Snyder*, 64 Mo. 58; *Maguire v. State Savings Association*, 62 Mo. 344. For the reasons, then, that the legislature has never expressly conferred upon the St. Louis criminal court the power to suspend or remove an attorney from the practice, and if such power had been conferred, that it was limited by the provisions of the law already noted, we incline to the opinion that no such jurisdiction as claimed and pleaded by respondent exists.

## II.

Nor do we regard the soundness of the conclusion just announced affected by the fact that the word "may" is employed in section 488 of the act under discussion instead of the word "shall." The proper rule of construction in cases of this sort, as we understand it, is that *may* is to be held as meaning *shall* whenever the statute requiring construction relates to a power conferred on public officers, concerning the public interest and the rights of third persons, who have a claim *de jure* that the power shall be exercised in this manner for the sake of justice and the public good. *Leavenworth v. Co. Ct. of Platte Co.*, 42 Mo. 171, and cases cited; *Steines v. Franklin Co.*, 48 Mo. 167, and cases cited. No argument is necessary to show that the rule of construction mentioned is applicable here, since the matter under consideration, the suspension or removal of an attorney for felony or infamous crime or professional misconduct, obviously concerns justice and the public good.

Other reasons may also be urged which favor the conclusion we have reached. The power to license attorneys is only conferred on the Supreme Court, the St. Louis court

29—73

of appeals and the circuit court. It will not be claimed that the St. Louis criminal court possesses such power. But for a license granted by one of the superior courts, which the statute designates, an attorney could not practice his profession in an inferior court. No instance, it is believed, can be found, where a court not authorized to admit to the bar has attempted to revoke a license granted by a superior court by disbarring one admitted by the latter. Upon this ground, no doubt, rests an early case where an attorney accused of malpractice in an inferior court was proceeded against, not in that court, but in a court which possessed the power to admit. And the reason given therefor was that " an attorney cannot practice in an inferior court if he is not an attorney of a superior court, and that is the reason why this court interferes." *Evans v. P——*, 2 Wils. 382; 1 Bacon Ab., 509.

Very anomalous consequences would, as we think, attend as a result of the power claimed by the respondent. An attorney might be disbarred in an inferior court and still have his license unrevoked as to all the superior courts. Whereas, if removed under the provisions of the statute already commented upon, such removal operates as a removal from practice in all the courts of this State and an absolute revocation of the license previously granted. The foregoing reasons compel us to award a peremptory writ. All concur.