## In the Matter of ISAAC A. LETCHER.

### In Banc, December 4, 1916.

1. **CONTEMPT: Jurisdiction.** No one can be held in contempt of a court for refusing to obey an order which that court had no jurisdiction to make.

2. ———: ———: **Raised by Court Sua Sponte.** The Supreme Court is the keeper of its own jurisdiction; and it is its right and duty, of its own volition, whether or not the question of jurisdiction is raised or mooted by the parties, to determine the question as the initial one up for decision in every case that comes before it.

3. ———: ———: **Due Process of Law.** Any set of statutes, or any scheme, or any so-called procedure, that permits one person to take from another any article, or record, or property, without a hearing or day in court, would authorize the taking of the other's property without due process of law, and cannot thus be arbitrarily enforced without denying to such other his constitutional rights. No one can be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard.

4. ———: ———: **What Constitutes the Supreme Court.** No one judge of the Supreme Court can judicially sit and finally determine any matter; when the procedure contemplates a judicial determination, if the matter is in Division, a quorum thereof must sit; if it is in Banc, at least four judges constitute a quorum to hear and judicially determine it.

5. ———: ———: **Warrant to Collector to Deliver Books.** The statutes (Art. 1, chap. 101, R. S. 1909) requiring any civil officer whose office shall be vacated to deliver to his successor all records, books and papers appertaining to any public office, and declaring that if he shall fail to deliver them to the person entitled to same any judge of the Supreme Court, upon the affidavit of any credible person, setting forth the facts, may issue his warrant, directed to the marshal, commanding him to seize all such records, books and papers and deliver them to the proper officer named in the warrant, contemplates, in section 10413, that the court or judge will "determine the matter according to right and justice," and that means that the court or justice, before issuing the warrant, must act judicially, or not act at all; and as no one judge constitutes the Supreme Court, a warrant summarily issued upon such affidavit, by one judge, even the Chief Justice, is not due process of law, is without jurisdiction, and the offending officer cannot be held for contempt for refusal to obey the warrant. Even if the court otherwise has jurisdiction of the matter, there must first be a judicial determination by the court, of the offending officer's right to the book and papers which he claims are his private property and do not appertain to the office, before such warrant can issue. Otherwise, the statutes themselves would be void as a denial of due process of law.

6. ———: ———: ———: **Original Jurisdiction.** The Supreme Court has no original jurisdiction to issue to a former county collector an order to deliver to his successor in office records and papers which it is alleged appertain to the office and belong to the county, and sections 10409, 10412 and 10413, Revised Statutes 1909, in so far as they purport to give to such court or a judge thereof original jurisdiction to issue such an order, are void because not within the constitutional provisions naming the original writs which the court may issue.

## Citation for Contempt.

CITATION QUASHED.

*M. E. Rhodes* and *S. E. Nipper* for petitioner.

(1) All constitutional courts have the inherent power to punish for contempt, such power being derived from the very nature of their organization and essential to their existence and the administration of justice. 7 Am. & Eng. Ency. Law (2 Ed.), p. 30;. State ex inf. v. Shepherd, 177 Mo. 205; In re Clark, 20 Mo. 121; Freeder v. Bambrick, 162 Mo. App. 528; In re Ellison,

256 Mo. 378. (2) The case before the court is one of constructive, criminal contempt. In re Clark, 208 Mo. 121; Cooper v. People, 22 Pac. 800; 7 Am. & Eng. Ency. Law, pp. 28, 29. (3) Respondent is required under the provisions of Sec. 10405, R. S. 1909, to turn over to his successor all books, records and papers belonging or appertaining to said office, and he is not excused from doing so upon the theory that such "duplicate tax receipts" are such records as are not specifically required to be kept by law. The property should have been turned over on the service of the warrant. Sec. 10405, R. S. 1909; Price v. Adamson, 37 Mo. 145; Fleutge v. Priest, 53 Mo. 540; Flentge v. Priest, 57 Mo. 515; State ex rel. v. Seehorn, 143 Mo. App. 182. (4) The action before the circuit court did not amount to *res adjudicata* nor do we understand such is contended by respondent, as there was no counter-affidavit filed, such action of the court amounting only to a denial of the writ without prejudice. In re Clark, 208 Mo. 121; Dean v. Railroad, 148 Mo. App. 449.

*Edward T. Eversole* and *Ernest A. Green* for respondent.

A motion for judgment on the pleadings is in the nature of a demurrer. Like a demurrer it admits the truth of all well-pleaded facts in the pleadings of the opposing party. Consequently, petitioner, by his motion for a judgment on the pleadings, admits the truth of all the allegations set up in respondent's return, and also is deemed to have admitted the untruth of all allegations contained in the original affidavit which have been denied by respondent's return. 31 Cyc. 606; State v. Goffee, 192 Mo. 670; Kemper v. Berkley, 79 Mo. App. 578; Walling v. Brown, 9 Idaho, 184; State ex inf. v. Railroad, 141 S. W. 643; Kavanaugh v. Supreme Council, 158 Mo. App. 234.

FARIS, J.—This is an original proceeding bottomed upon a citation for contempt, and now here at issue

upon a motion for judgment upon the pleadings. For an understanding of the questions which we find it necessary to discuss, we must needs go back to the foundations of the case:

At a time prior to the 17th day of May, 1915 (on which day an affidavit as provided by section 10409, Revised Statutes 1909, was in our April term, 1915, lodged with our Chief Justice), one Isaac A. Letcher was collector of the revenue of Washington County. His term expired on the 4th day of March, 1915, and his successor, one George Carr, thereupon entered duly upon the discharge of the duties of said office. Thereafter a controversy arose between Carr, the incumbent, and Letcher, the outgoing collector, as to the possession of a certain book, called in the record before us an "Abstract of Collections," and of certain duplicate current tax receipts for the year 1914; Carr contending that said book and receipts were adjuncts of the office of collector, while Letcher contended that they were not such books and papers as were by law required to be kept, but that they were his own private property, kept by him for his own convenience. Carr thereupon, and on the said 17th day of May, filed in this court in the April Term, 1915, the following affidavit (caption and merely formal parts omitted):

"George Carr, being duly sworn, upon his oath states that on the 3rd day of November, 1914, he was duly elected collector of the revenue within and for Washington County, Missouri, and that he was commissioned, sworn, qualified and gave bond as such collector and entered upon the duties of said office on the 4th day of March, 1915; that Isaac A. Letcher was the duly elected, qualified and acting collector of the revenue of said Washington County, Missouri, from the first Monday in March, 1911, to the first Monday in March, 1915, and the said Isaac A. Letcher has retained and now has in his possession certain books, records and papers belonging to said office of collector of the revenue of said county, to-wit: One book called and named 'Abstract of Collections' for the year 1914,

and all the duplicate current tax receipts for the year 1914, and this affiant is entitled to the possession of the same; that the said books belong to Washington County, Missouri, and were paid for by Washington County aforesaid, and appertain to the office of the collector of the revenue of and for said county; that the said Isaac A. Letcher has failed and refused to deliver said books, records and papers to the affiant as he is required to do under the provisions of article I, chapter 101, of the Revised Statutes of Missouri of 1909.

"Wherefore, affiant prays the Honorable Archelaus M. Woodson, Judge of the Supreme Court of Missouri, to issue his warrant to the marshal of the Supreme Court, requiring him to deliver to the affiant the books, records and papers named in the affidavit."

On the 19th day of May, 1915, there was issued by our Chief Justice, under the provisions of section 10409, Revised Statutes 1909, the same being one of the sections of article 1 of chapter 101, Revised Statutes 1909, the following order (omitting signature and merely formal parts):

"The State of Missouri, to the Marshal of the Supreme Court of Missouri, GREETING:

"Information having this day been given to Archelaus M. Woodson, Chief Justice of our Supreme Court, by the affidavit of George Carr, filed with said justice, that the said George Carr, on the 3rd day of November, 1914, was duly elected collector of the revenue within and for Washington County, Missouri, and that he was commissioned, sworn, qualified and gave bond as such collector and entered upon the duties of said office on the 4th day of March, 1915; that Isaac A. Letcher was the duly elected, qualified and acting collector of the revenue of said Washington County, Missouri, from the first Monday in March, 1911, to the first Monday in March, 1915, and the said Isaac A. Letcher has retained and now has in his possession certain books, records and papers belonging to said office of collector of the revenue of said county, to-wit,

one book called and named 'Abstract of Collections' for the year 1914, and all the duplicate current tax receipts for the year 1914, and that affiant is entitled to the possession of the same; that the said books belong to Washington County, Missouri, and were paid for by Washington County aforesaid and appertain to the office of the collector of the revenue of and for said county; that the said Isaac A. Letcher has failed and refused to deliver said books, records and papers to the affiant as he is required to do under the provisions of article 1, chapter 101, of the Revised Statutes of Missouri of 1909.

"These are, therefore, to command you to search for and seize the books, records and papers hereinbefore mentioned, appertaining to the collector's office of said Washington County, and deliver same into the hands of George Carr, collector of said county, and that if said books, records and papers be not delivered to you upon demand, you may break open any doors, trunks, or places in which said books, records and papers may be, or in which you may suspect them to be, and if any person shall resist you in the execution of this warrant, you shall arrest him and carry him before some justice of the peace to be dealt with for obstructing the execution of process, and that if said Isaac A. Letcher shall conceal or destroy said books, records and papers so as to prevent you from seizing same, then you shall report that fact to the undersigned, so that the said Isaac A. Letcher may be dealt with as for a contempt; and that you make return of your proceedings hereunder."

This order (designated in the applicable statute as a "warrant"), having been duly served upon said Letcher, our marshal made his return, showing such service and further showing that Letcher refused to produce or deliver the said book and receipts, and refused to make known their whereabouts, and that our said officer after making diligent search therefor was unable to find them.

269 Mo.—10

Thereupon and on the suggestion of Carr, we issued our citation to Letcher to appear before us on the 31st day of May, 1915, then and there to show cause, if any be had, why he should not be punished by us for contempt. Letcher (called hereinafter contemner, for convenience and brevity only) duly appeared on the day to which he was cited and filed in this court, *first*, a petition under the provisions of sections 10412 and 10413, praying that a citation issue to said George Carr, and to all other persons interested, to appear before this court to the end that the matter in controversy, to-wit, the matter of the right of possession of said book and duplicate tax receipts might be determined by us "according to right and justice;" *second*, a return, wherein in substance he denied that the book and tax receipts in controversy were records of the office of collector of the revenue of Washington County; denied that he was withholding any books or records pertaining to said office, but averred the fact to be that the book and tax receipts in question were the private personal property of contemner, kept by him for his own personal and private convenience. Contemner further averred that there had been presented to Hon. E. M. Deering, as judge of the Twenty-first Judicial Circuit, an affidavit under said section 10409, having for its object the identical relief prayed for by said Carr, by his affidavit aforesaid, lodged in the instant case with our Chief Justice and on which our initial order herein was bottomed; that upon a full hearing Judge Deering refused to issue his warrant for said book and papers, finding that the said records were the property of contemner; that a suit in replevin, brought by Washington County for the possession of said records, was pending undisposed of; that section 10409 had no application, as contemner was advised, to the facts presented in this controversy, but if this court should hold said section to be applicable, then contemner desired that all parties in interest be cited before this court and the matter be determined according to right and

justice, and contemner prayed that our citation for contempt be quashed and he be discharged thence.

To this return, after filing a general denial, learned counsel for said Carr filed a motion for judgment upon the pleadings.

While upon the view we take of the matter a shorter statement would have sufficed, yet since the proceeding is interesting and novel in the annals of jurisprudence, we have set forth so much of the facts in order that the questions up for judgment may be fully seen by those interested and the curious as well.

Upon the very threshold we meet the question of our jurisdiction to entertain and to hear and determine the initial matter out of which the instant proceeding in contempt grew. If we had no jurisdiction

**Jurisdiction.** to issue the original order to contemner requiring him forthwith to turn over the book and duplicate tax receipts to Carr, then it is manifest that contemner can not be in contempt for refusing to obey such order. For no one can be, or ought to be, held in contempt of a court for refusing to obey an order which that court had no jurisdiction to make. [1 Bailey on Habeas Corpus, 262; Ex parte Siebold, 100 U. S. 371; In re Ayers, 123 U. S. 443; Ex parte Rowland, 104 U. S. 604; Ex parte Fisk, 113 U. S. 713; In re Pierce, 44 Wis. 411; Ex parte Hollis, 59 Cal. 405.]

While the question of our jurisdiction is not raised, or in anywise mooted, we are by law the keepers of our own jurisdiction and we have the right and it is our duty to determine this question for ourselves as the initial question up for decision in any case which comes before us. So of our own volition we will look to this question here.

Even a casual examination of the statutes under which the initial proceeding herein was brought (Art. 1, chap. 101, R. S. 1909), shows that it is contemplated that a hearing may be had thereunder to determine the right of possession of the records claimed in the affidavit. Indeed, it is patent that any scheme or so-called

procedure which (upon an order issued pursuant to an *ex parte* affidavit) would permit one person to take from another any article, or record, or property, arbitrarily, without any hearing, or day in court, or without affording any opportunity to be heard, would be to take the property of another without due process of law. [Hovey v. Elliott, 167 U. S. 409.] In short, unless we construe the statutes in question as contemplating among their provisions the affording of an opportunity for a hearing of the disputed question of the right of possession of the records so arbitrarily taken, then the whole scheme is utterly void. To upheld these statutes at all we must construe sections 10412 and 10413 as permitting a hearing to one from whose possession records are arbitrarily taken by order of the court or judge who issues such "warrant." In such a hearing, wherein the court or judge is required to "determine the matter according to right and justice" (Sec. 10413, R. S. 1909), such officer or tribunal acts judicially, otherwise he could not act at all. Apposite to both of the propositions, supra, Mr. Justice WHITE (now Mr. Chief Justice WHITE), in the case of Hovey v. Elliott, 167 U. S. 1. c. 418, said:

" 'It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, *and has been afforded an opportunity to be heard.* Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and can never be upheld where justice is justly administered.'

"Again, in Ex parte Wall, 107 U. S. 265, 289, the court quoted with approval the observations as to 'due process of law,' made by Judge COOLEY, in his Constitutional Limitations, at page 353, where he says:

" 'Perhaps no definition is more often quoted than that given by Mr. Webster in the Dartmouth College case: "By the law of the land is most clearly intended the general law; a law which hears before it condemns,

which proceeds upon inquiry and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society." '

"And that the judicial department of the government is, in the nature of things, necessarily governed in the exercise of its functions by the rule of due process of law, is well illustrated by another observation of Judge COOLEY, immediately following the language just quoted, saying: 'The definition here given is apt and suitable as applied to judicial proceedings, which cannot be valid unless they "proceed upon inquiry," and "render judgment only after trial." ' " '

Therefore our jurisdiction to issue such an order as was issued herein, connotes, or carries with it as a necessary legal concomitant, the power and jurisdiction to hear and determine the matter of the ultimate right of possession of the records in controversy, "according to right and justice." [Sec. 10413, R. S. 1909.] No one judge of this court can judicially sit and *finally* determine any matter "according to right and justice," when the procedural requisites connote a judicial determination. If the matter is in a Division, a quorum thereof must sit: if in Banc -at least four constitute a court to hear and judicially determine questions of whatever sort, wherein our jurisdiction lies.

Under the Constitution our jurisdiction (except as to the issuance and hearing of certain original remedial writs), is appellate only. The pertinent provision of the Constitution so limiting our powers reads thus:

"The Supreme Court, except in cases otherwise directed by this Constitution, shall have appellate jurisdiction only, which shall be coextensive with the State, under the restrictions and limitations in this Constitution provided." [Sec. 2. art. 6, Constitution.]

Construing the provision set forth supra, and also the exceptions thereto as the Constitution sets them out, we said in the case of Wait v. Railroad, 204 Mo. l. c. 504, this:

"The Supreme Court is a court of appellate juris-diction confined by the Constitution to the exercise of such jurisdiction only, that is, it sits as a court of er-rors, except in cases otherwise directed by the Consti-tution. [Art. 6, sec. 2, Constitution of Missouri.] The cases of which we have original jurisdiction are set forth in section 3 of the same article, reading: 'The Supreme Court shall have a general superintending control over all inferior courts. It shall have power to issue writs of *habeas corpus,* mandamus, *quo warranto, certiorari* and other original remedial writs, and to hear and determine the same.'

"In construing the foregoing section of the Consti-tution, this court has held that a writ of injunction, though remedial, is not another original remedial writ in the constitutional sense, but that a writ of prohibi-tion is an original remedial writ in such sense; and, without going into the philosophy of the matter, it may be said that it is quite out of the question to hold that we have jurisdiction to hear and determine the issues raised by the motion in the case—though it cannot be denied they smack of originality as well as remedy. The phraseology of the Constitution is general and somewhat elastic; but not elastic enough to give us jurisdiction of every remedy and writ that in common parlance may be said to be original and remedial, and we deem it our bounden and obvious duty to restrict our original jurisdiction well within the wise and im-passable limits of the Constitution."

It has been so often said that it is not profitable further to consider whether it is within the power of the Legislature to add to or subtract from our juris-diction as it is defined and limited by the Constitution. We have repeatedly had occasion to discuss this ques-tion and upon it we have spoken with but one voice. [State ex rel. v. Locker, 266 Mo. l. c. 389.]

It follows we think, that sections 10409, 10412 and 10413, Revised Statutes 1909, *so far as they purport to give this court or a judge thereof original jurisdiction* to issue the order therein provided for and to hear and

State ex rel. v. Ellison.

determine the disputed right to the possession of books and records, according to right and justice, are void because not within constitutional delimitations. [Secs. 1, 2 and 3, art. 6, Constitution; Sec. 8, Amendment of 1884; Wait v. Railroad, supra; State ex rel. v. Locker, supra; State ex rel. v. Tincher, 258 Mo. l. c. 17; State ex rel. v. Woodson, 161 Mo. l. c. 454.]

Since we had no jurisdiction to issue the warrant by which we ordered the contemner to turn over the records in controversy to said Carr, it follows that contemner could not be guilty of contempt of this court for refusing to comply with that order. [Ex parte Rowland, supra.] Other questions are mooted, but since this view disposes of the case, we need not go into these other questions. Let our citation for contempt be quashed and the contemner discharged. All concur.