## In re F. P. SIZER and H. A. GARDNER.

### In Banc, August 14, 1923.

1. **ATTORNEYS: Disbarment: Original Jurisdiction.** The Supreme Court has original jurisdiction to disbar attorneys for malpractice and other acts forbidden by statutes, whether such acts were committed in connection with cases pending in this court, or in cases finally determined in other courts. [DAVID E. BLAIR and JAMES T. BLAIR, JJ., dissenting.]

2. ——: ——: **Original Constitutional Jurisdiction: Readoption with Prior Interpretation.** The incorporation in the Constitution of 1875 of the provision found in the prior constitutions defining the jurisdiction of the Supreme Court, in identical words, after said court had decided that it had original jurisdiction to disbar attorneys, is a persuasive argument that said provision means that this court has such original jurisdiction.

   *Held*, by DAVID E. BLAIR, dissenting, that the provision of the Constitution (Sec. 3, Art. VI) declaring that the Supreme Court "shall have power to issue writs of *habeas corpus, mandamus, quo warranto, certiorari* and other original remedial writs, and to hear and determine the same" means exactly what it says, and limits and restricts the original jurisdiction of the court to the writs specified, and no statute can enlarge such jurisdiction, and all decisions holding that the court has original jurisdiction to disbar an attorney for malpractice or dishonorable conduct in cases not pending in said court should be overruled. *Held*, also, that it makes no difference how long the court has been asserting inherent power to disbar attorneys for acts not committed in connection with cases pending therein, such decisions should be overruled, because the Constitution, by language plain and unambiguous, says that the court has no such original jurisdiction.

### Disbarment Proceeding.

Motion to dismiss overruled.

*Frank W. McAllister, A. L. McCawley* and *John T. Sturgis* for movents.

300 Mo.—24

(1)    The various courts of this State are created by our Constitution and the jurisdiction of each court is derived from and fixed by such Constitution. No court has power to exercise jurisdiction (inherent or otherwise), nor can the Legislature confer jurisdiction on any court in contravention of the terms of the Constitution. Where jurisdiction is limited or forbidden by the Constitution, the Legislature is powerless to confer such jurisdiction. In re Waugh, 72 Pac. 710; 11 Cyc. 661-B; Windsor v. Bridges, 64 Pac. (Wash.) 781; State ex rel. v. Nast, 209 Mo. 721; State ex rel. v. Ryan, 182 Mo. 355. (2)   The Supreme Court is one of the courts created by the Constitution and whose jurisdiction is defined and limited thereby. Its jurisdiction and the limitation thereof is contained in Section 2, Article VI, of the Constitution. (3)   Its jurisdiction is therefore expressly limited to such as is appellate, and all original jurisdiction is prohibited except such as is otherwise expressly directed by such Constitution. Section 3, Article VI, makes the exception to the appellate jurisdiction, and confers certain definite original jurisdiction, to-wit, to exercise a general superintending control of inferior courts and to issue, hear and determine certain original remedial writs therein specified. There are certain other exceptions to the jurisdiction of the Supreme Court being appellate only, in other clauses of the Constitution, but same are not in anywise involved here. The Legislature is powerless to enlarge or curtail such original jurisdiction, and any statute attempting to do so is void. 11 Cyc. 706; Foster v. State, 41 Mo. 62; Vail v. Dinning, 44 Mo. 210; State ex rel. v. Flentge, 49 Mo. 488; State ex rel. v. Miles, 210 Mo. 184; State ex inf. v. Towns, 153 Mo. 110; Wait v. Railroad, 204 Mo. 504; In re Letcher, 269 Mo. 150; State ex rel. v. Locker, 266 Mo. 389; State ex rel. v. Tincher, 258 Mo. 15; Ex parte Bethurum, 66 Mo. 553; State ex rel. v. Harty, 275 Mo. 59. (4)   The right to practice law is a valuable property right. No person can be deprived of such right except by due process of

law, which includes proper notice, a right to be heard in defense, and a trial of the facts. No one can claim that a disbarment proceeding is an exercise of appellate jurisdiction, or a supervisory jurisdiction over inferior courts. Nor is it an original remedial writ of which the Supreme Court is given jurisdiction. It is merely a judicial proceeding involving private rights on complaint of a private individual on ordinary notice and involving a large number of issues of fact and the taking of much evidence. In such a proceeding, the Supreme Court has no original jurisdiction. 2 R. C. L. sec. 196, p. 1103; State ex rel. v. McElhinny, 241 Mo. 606; Fish v. Printing Co., 102 Mo. App. 24; Ex parte Garland, 4 Wall. 333, 18 Law. Ed. 366; Bradley v. Fish, 13 Wall. 335, 20 Law Ed. 652. (5) What is termed the inherent power of courts to disbar attorneys, at least for matters not occurring in the presence of the court or in connection with some proceeding in that court, does not mean that such power may not be forbidden to one court, especially an appellate court, and vested solely in other courts. It does not mean that a court cannot be created without such power and jurisdiction. Courts of superior or general jurisdiction have the inherent power to disbar attorneys in the sense that such power does not require any express constitutional or statutory provision granting the same, as such power will be inferred unless expressly or impliedly forbidden. Such power is not inherent in even superior courts in the sense that courts cannot be created without such power or that the court-making power, whether the Constitution or statute, cannot deprive such court of such power. This is especially true where, in the division of jurisdiction, such power and jurisdiction is vested in other courts. 2 R. C. L. sec. 179, p. 1086; State v. Ebbs, 150 N. C. 44, 19 L. R. A. (N. S.) 892; In re Saddler, 130 Pac. 906, 44 L. R. A. (N. S.) 1195; Fairfield Bar Assn. v. Taylor, 13 L. R. A. 767; In re Applications to Practice Law, 143 N. C. 1, 10 L. R. A. (N. S.) 293; Danforth v. Eagan, 139 St.

Rep. 1030; Kane v. Haywood, 66 N. C. 1; State v. Foreman, 3 Mo. 602; State ex rel. v. Laughlin, 73 Mo. 443; State ex rel. v. Peabody, 63 Mo. App. 380; Editorial Note, In re Philbrook, 45 Am. St. 72. (6) The power to disbar attorneys is sometimes said to be inherent in courts possessing the power to punish for contempt, and that these two powers rest on the same basis. There are, however, in several respects, marked distinctions between the power to disbar attorneys and the power to punish for contempt. Even the power to punish for direct or criminal contempt is not inherent in courts as such, in the sense that a court cannot exist without such power, or that the Constitution creating a court could not exclude such power from one court or classes of courts and vest it in another, or even forbid its exercise altogether, leaving such acts to be punished by regular criminal procedure. These differences between contempt and statutory disbarments are noted in: 9 Cyc. 30, 32; State ex rel. v. Ryan, 182 Mo. 355; State ex rel. v. Campbell, 25 Mo. App. 640; State ex rel. v. Dillon, 96 Mo. 62; Rapalge on Contempts, sec. 13. The idea of punishment, so prominent in contempt proceedings, has no appropriate place in statutory disbarment and the action is an ordinary civil proceeding. 2 R. C. L. p. 1088, sec. 188, and note 2; In re Philbrook, 45 Am. St. 72. Courts in this State which evidently have power to punish for contempt do not have the power to disbar attorneys. State ex rel. v. Laughlin, 73 Mo. 443. (7) The prosecution will doubtless rely on the cases of State ex rel. v. Mullins, 129 Mo. 237; State ex rel. v. Harber, 129 Mo. 293; State ex rel. v. Reynolds, 252 Mo. 369 (Selleck's Case), and perhaps Jones v. Sanderson, 229 S. W. 1087, though not discussing this question. The Mullins and Harber cases arose from the mutilation and falsifying of the record of a criminal case pending in the Supreme Court on appeal. Those cases were merely collateral to a case of which this court had appellate jurisdiction. They were, in substance, contempt cases, having to do with the orderly procedure of this court

and dealing with acts tending to obstruct justice therein. Selleck's Case had to do with the jurisdiction of the St. Louis Court of Appeals, whose original jurisdiction is not expressly limited by the Constitution as is that of the Supreme Court. This court followed the Harber Case without noting the widely different state of the basic facts. In these cases, the Supreme Court discussed only the power of the Legislature to limit the jurisdiction of the Supreme Court, and does not seem to have considered that this is not a question of the power of the Legislature over the jurisdiction of the Supreme Court, but is a question of the limitation of such jurisdiction by the Constitution itself. The distinction is that where a court is created by the Constitution and given certain express or implied powers the Legislature cannot take the same away or limit it, but the Constitution, in creating the court, has full power to define and limit its jurisdiction. There can be no inherent power to do what the Constitution forbids.

*J. P. McCammon, C. F. Wescoat, A. T. Dumm* and *Geo. H. English* for petitioners.

(1) This court possesses inherent power and jurisdiction to disbar attorneys from the practice of law for the commissions of acts in violation of their duty as attorneys. State ex rel. v. Reynolds, 252 Mo. 369; State ex rel. v. Mullins, 129 Mo. 236; State ex rel. v. Harber, 129 Mo. 271; State ex rel. Jones v. Laughlin, 73 Mo. 446; In re Gorsuch, 214 Pac. 794. (2) The people of Missouri have, by the adoption of successive constitutions containing identically the same provisions as to the powers of the Supreme Court, which powers have for more than a century been construed to embrace the jurisdiction to disbar attorneys for offenses, conferred constitutional jurisdiction upon this court to that end. Laws of Territory of La. 1804, sec. 4; Constitution of 1820, Article V; Laws of 1824, "Attorneys," secs. 2-6; Constitution 1845, 1855 and 1865; State v. Foreman, 3

Mo. 602; Strother v. State, 1 Mo. 605; State v. Watkins, 3 Mo. 480; Sanders v. Anchor Line, 97 Mo. 26, 6 R. C. L. 54.

WOODSON, C. J.—This is an original proceeding instituted in this court having for its object the disbarment of F. P. Sizer and H. A. Gardner, of Monett, Missouri, from practicing law in the courts of this State. The petition is signed by A. L. Cooper of the Kansas City Bar and J. P. McCammon of Springfield, Missouri.

The present hearing is limited to the motion to dismiss the cause because of the lack of jurisdiction of this court to try it. It reads (formal parts omitted):

"Now come F. P. Sizer and H. A. Gardner and move the court to dismiss this proceeding, for the reason that this court is without jurisdiction to hear or determine the same." Counsel for defendants have made a reasonably fair summary of the petition filed against them, which is as follows:

"It will not be necessary for a full understanding of the issues presented by this motion to dismiss, to reprint the petition or complaint which consists of some forty printed pages, mostly evidence. It will suffice to say that said complaint charges that the respondents, Sizer and Gardner, are practicing attorneys-at-law in this State, and have been for many years partners in such profession; that they have been guilty of professional misconduct in the practice of law and have especially been guilty of violating Section 668, Revised Statutes 1919, in that said attorneys have divided fees received in the practice of law with persons not licensed to practice law. Defendants are charged with having had in their employ persons not licensed attorneys to solicit and procure business for said Sizer and Gardner under an agreement to divide the fees so received; that they have been guilty of champerty and maintenance in procuring and prosecuting cases, in that they have agreed, as a part of the contract of employment as attorneys, to pay all the costs of the litigation and to furnish their clients money to live on pending the litigation.

"The complaint mentions eight specific and separate cases, or rather causes of action in connection with which the defendants are alleged to have been guilty of the acts and practices aforesaid, amounting, as it is claimed, to malpractice and misconduct in their professional capacity, authorizing their removal from the practice of law, as provided by Section 681, Revised Statutes 1919. That the eight specific instances mentioned are causes of action rather than actual court cases, as it is not alleged that suits thereon were ever brought in any court. If suits were brought in any instance, it is not claimed that same ever reached this or any other appellate court in this State. The malpractice of which complaint is made is in no way connected with any case or proceeding pending or heard in this court.

"All of the eight specific causes of action, in connection with which the alleged malpractice is claimed to have occurred, are damage cases against railroads, arising from personal injuries.

"Four of the cases mentioned affected the St. Louis-San Franciso Railroad; two affected the Missouri, Kansas & Texas Railroad; one the Midland Valley Railroad, and one the Arkansas Central Railroad. In four of the cases mentioned, the cause of action accrued in other states—in Arkansas and Oklahoma. Two of the said railroads do not enter this State, and no suit could have been brought against same in the courts of this State. The whole period of time covered by these specific causes of action is nearly ten years, the first one having accrued in 1914.

"These facts are mentioned to show what a wide range this investigation will cover if jurisdiction is retained by this court, and how remotely, if at all, this court is connected with the basic facts of this proceeding. Most of the acts of malpractice charged occurred in other states, and not a single act was connected with or affected this court or any case or proceeding ever pending therein."

The first insistence made by counsel for defendants is: The various courts of this State are created by our State Constitution and the jurisdiction of each court is derived from and fixed by such Constitution. No court has power to exercise jurisdiction (inherent or otherwise), nor can the Legislature confer jurisdiction on any court in contravention of the terms of the Constitution. Where jurisdiction is limited or forbidden by the Constitution, the Legislature is powerless to confer such jurisdiction. And they cite the following cases: In re Waugh, 72 Pac. 710; Winsor v. Bridges, 64 Pac. (Wash.) 781; State ex rel. v. Nast, 209 Mo. 708, 721; State ex rel. v. Ryan, 182 Mo. 349, 355. And that the Supreme Court is one of the courts created by the Constitution and whose jurisdiction is defined and *limited* thereby.

The jurisdiction of the Supreme Court and the limitation thereof contained in Section 2, Article VI, of the State Constitution, which reads: "The Supreme Court, except in cases otherwise directed by this Constitution, shall have appellate jurisdiction *only,* which shall be coextensive with the State under the restrictions and limitations in this Constitution provided."

It is next insisted by them that the jurisdiction of the Supreme Court is therefore expressly limited to such as is appellate, and all original jurisdiction is *prohibited* except as is otherwise expressly directed by such Constitution. Section 3, Article VI of the Constitution, makes the exception to the appellate jurisdiction of this court and confers certain definite original jurisdiction, to-wit: To exercise a general superintending control of inferior courts and to issue, hear and determine certain original remedial writs therein specified. There are certain other exceptions to the jurisdiction of the Supreme Court being appellate *only,* in other clauses of the Constitution, but same are not in anywise involved here. The Legislature is powerless to enlarge or curtail such original jurisdiction, and any statute attempting to do so is void. [11 Cyc. 706; Foster v. State, 41 Mo. 62; Vail v. Dinning, 44 Mo. 210; State ex rel. v.

Flentge, 49 Mo. 488, 490; State ex rel. v. Miles, 210 Mo. 127, 184; State ex inf. v. Towns, 153 Mo. 91, 110; Wait v. Railway, 204 Mo. 491, 504; In re Letcher, 269 Mo. 140, 150; State ex rel. v. Locker, 266 Mo. 384, 389, 391; State ex rel. v. Tincher, 258 Mo. 1, 15, 17; Ex parte Bethurum, 66 Mo. 546, 553; State ex rel. v. Harty, 275 Mo. 59.]

Counsel for each party have with much diligence and great learning, briefed and argued this case, as a perusal of the cases cited on each side will show; and after a careful reading of them I have reached the conclusion in my own mind that the contentions of counsel for defendants are correct, and that on principle this court has no jurisdiction of this case, and that it should be dismissed for that reason; but a majority of the members of this court are of a contrary opinion, and since this court has been holding contrary to my views here expressed for practically a century, I, myself, feel that it would be unwise to overrule the long line of cases extending over so long a period.

We have repeatedly held that this court has inherent power and jurisdiction to disbar attorneys from practicing law for the commission of acts in violation of their professional duty. [State ex rel. v. Reynolds, 252 Mo. 369; State ex rel. v. Mullins, 129 Mo. l. c. 236; State ex rel. v. Harber, 129 Mo. 271; State ex rel. Jones v. Laughlin, 73 Mo. l. c. 446; In re Gorsuch, 214 Pac. 794.]

And it is true as stated by counsel for the petitioners, "The people of Missouri have, by the adoption of successive constitutions containing identically the same provisions as to the powers of the Supreme Court, which powers have for more than a century been construed to embrace the jurisdiction to disbar attorneys for offenses, conferred constitutional jurisdiction upon this court to that end." This statement is verified by the following constitutional provisions and decisions of this court: Laws of Territory of La. 1804, sec. 4; Constitution of 1820, Art. V; Laws 1824, "Attorneys," secs. 2-6; Constitutions of 1835, 1845, 1855 and 1865; State v. Fore-

man, 3 Mo. 602; Strother v. State, 1 Mo. 605; State v. Watkins, 3 Mo. 480; Sanders v. Anchor Line, 97 Mo. 26, 6 R. C. L. 54.

The re-adoption of the constitutional provisions now under consideration so many times with the interpretation placed upon it by this court, to say the least, is very persuasive evidence that the real meaning of the provision was just what this court had so long been holding that it meant.

There has been so much said and written on this question, that it would be hard for me to find anything new to say upon it at this late date, so I will not prolong this opinion by attempting to add anything to the subject which has been so ably discussed so many times in the past.

For the reasons stated, in my opinion, the motion to dismiss should be overruled, and it is so ordered. *Walker, J.,* concurs; *Graves, Ragland* and *White, JJ.,* concur in the result; *David E. Blair, J.,* dissents in separate opinion; *James T. Blair, J.,* dissents.

DAVID E. BLAIR, J. (dissenting).—As said in the majority opinion this court has appellate jurisdiction only, except it has jurisidiction to issue and try writs of *habeas corpus, quo warranto, mandamus, certiorari* and other remedial writs. A proceeding to disbar a licensed attorney at law does not fall within the class of cases named. [State ex rel. v. Reynolds, 252 Mo. l. c. 379.] Our jurisdiction is claimed only upon the ground of inherent power.

In the cases of State ex rel. v. Mullins, 129 Mo. 231, and State ex rel. v. Harber, 129 Mo. 271, it was broadly announced that this court has inherent jurisdiction to disbar attorneys. In both those cases, which grew out of the same prosecution for murder, the attorneys were charged with spoliation of records by falsifying the bill of exceptions in a case on its way here on appeal. Mullins was acquitted and Harber and Knight were disbarred.

It is an entirely different thing to hold that this court has inherent power to punish by disbarment a lawyer guilty of improper practices in connection with a case pending in this court from what it is to say that this court has inherent power to disbar an attorney for conduct not in anywise pertaining to matters pending in this court or indeed in any court in this State. GRAVES, J., in Selleck's Case (State ex rel. v. Reynolds, supra) said, "Contempt and disbarment are kindred spirits;" yet no one would contend this court could punish a lawyer or anyone else in an original proceeding as for contempt of court for an act not committed against the good order and dignity of this court or in violation of its order made in some case properly pending here.

The case of State ex rel. Jones v. Laughlin, 73 Mo. 443, was in prohibition against the St. Louis Criminal Court which was proceeding in disbarment against an attorney for conduct in connection with a case pending in that court. The criminal court was held to be without jurisdiction to disbar because it was an inferior court of purely legislative creation and possessed only such powers as were conferred upon it by the Legislature. What SHERWOOD, J., there said concerning the inherent power of courts, whose powers in that particular were not under consideration, was *obiter*.

It makes no difference how long courts have been asserting inherent power to disbar attorneys, for acts not committed in connection with cases pending in such courts. Our Constitution has fixed jurisdiction of this court in plain and unambiguous language and provided that it should have no original jurisdiction save in the sort of cases above mentioned.

I admit Selleck's Case holds conrary to these views. The several courts of appeals have the same jurisdiction we have in such cases, and if the St. Louis Court of Appeals had jurisdiction in Selleck's Case we have jurisdiction in this case. But I do not think that case was properly decided on the point of the inherent power of the St. Louis Court of Appeals to disbar attorneys. I do

not so read the Constitution. To justify that decision we are compelled to read something into the Constitution not therein written. It follows also that the attempt of the Legislature to confer such power upon the Supreme Court and Courts of Appeals (Sec. 682, R. S. 1919) was futile.

Unlike my brother WOODSON, who announces his personal view that we are without jurisdiction and that the case should be dismissed, I think we should overrule cases which appear to have been decided contrary to the express provisions of the Constitution.

I therefore respectfully dissent.