IN MATTER OF APPLICATION of W. C. IRWIN and SAM BUSHMAN for WRIT OF HABEAS CORPUS.—6 S. W. (2d) 597.

Court en Banc, May 18, 1928.

*H. P. Lauf, amicus curiae.*

BLAIR, J.—This is an original proceeding under the Habeas Corpus Act. Petitioners are attorneys at law and members of the bar of Cole County. They declined to obey an order of the Circuit Court of Cole County and were adjudged to be in contempt of court and were committed to jail until they shall render obedience to such order.

Petitioners filed their application for our writ of habeas corpus, alleging that the circuit court had no jurisdiction to make the order, which they refused to obey, and that their imprisonment is illegal for that reason. Our writ issued and was duly served upon the sheriff of Cole County. In the meantime stipulations had been filed waiving the issuance and service of such writ. Likewise the production before the court of the bodies of petitioners was waived. Pending decision of the case, petitioners have been released from custody.

The sheriff, who had the petitioners in custody, has filed his return and petitioners have filed their denial thereto. By leave of court, H. P. Lauf was permitted to file a brief as *amicus curiae*, in answer to briefs filed by petitioners. The case was argued and sub-

mitted and is thus before the court. While the facts are not controverted, we must state them briefly for a proper understanding of the legal questions presented.

One Nerses Kavorkian, under the *alias* of Mike Mlongian, was arrested in Passaic, New Jersey, and brought back to Cole County, Missouri, under formal requisition proceedings, to answer a felony charge preferred against him by the First National Bank of Jefferson City. He was brought to this State by the sheriff of Cole County. The New Jersey officers turned over to the sheriff certain money and a three-carat diamond, mounted in a ring, and said to be worth about $1500. This property had been taken off the person of Kavorkian when he was arrested in New Jersey. When he was returned as a prisoner to Cole County, he employed Attorney Lauf to defend him against the criminal prosecution and gave him an order on the sheriff for the money and the diamond ring delivered to him in New Jersey.

Thereupon the money was turned over to said attorney, but the sheriff refused to deliver the diamond ring, claiming that Kavorkian had made him a present of it. A replevin suit was filed by Kavorkian on February 17, 1928. A sufficient replevin bond, in the sum of $3000, for the taking and delivery to him of the diamond ring, was given by the plaintiff. There was also filed the statutory affidavit that the property was wrongfully taken from plaintiff and that his right of action accrued within a year. On account of such allegation, the diamond ring could not be retained by defendant in the replevin suit upon the giving of a redelivery bond. [Sec. 2077, R. S. 1919.] The sheriff being a defendant, he was served with the writ of replevin and the summons by the coroner of Cole County. When demand was made by the coroner for the delivery to him of the diamond ring, the sheriff denied having possession of it and claimed that he had delivered it to petitioners Irwin and Bushman in payment of attorneys' fees due them from him.

On February 18, 1928, an amended petition was filed in the replevin suit making petitioners defendants also. The writ and summons thereunder were served on petitioners by the coroner. The return to the writ of replevin states that the coroner served the writ on petitioner Bushman, for himself personally and for the law firm of Irwin & Bushman, and that the coroner made demand for the diamond ring and that petitioner Bushman declared to the coroner that said property was in the possession of petitioner Irwin. As to petitioner Irwin, the return was that Irwin "refused to deliver said ring." No other or further steps appear to have been taken in the replevin suit of Kavorkian v. Withaup, Irwin and Bushman, No. 5716.

On February 20, 1928, a petition was filed in the Cole County Circuit Court, entitled "Ex Parte: Nerses Kavorkian #5720," ad-

dressed to the Hon. Henry J. Westhues as judge of the Circuit Court of Cole County. Kavorkian alleged that he was detained by the sheriff of Cole County to answer a criminal prosecution and that the officers at Passaic, New Jersey, unlawfully took from him, among other personal property, the diamond ring above mentioned and delivered the same to Sheriff Withaup, to be kept for said Kavorkian while he was in custody. It was further alleged that Kavorian had employed H. P. Lauf of Jefferson City as his attorney and had asked Sheriff Withaup to turn over to said Lauf all his personal property and that said sheriff failed and refused to deliver to said attorney the diamond ring in controversy.

Said Kavorkian further alleged that he demanded said diamond ring from said sheriff on February 17, 1928, but delivery thereof was refused with the explanation that said diamond ring had been delivered by said sheriff to Irwin & Bushman in payment of attorneys' fees owing by said sheriff to them. (This evidently was a reference to the service and return in the replevin suit, although said suit was not specifically referred to). It was then alleged that on February 18, 1928, demand for said diamond ring was made on Irwin & Bushman through petitioner Sam Bushman and that delivery was refused. (This evidently referred to the service and return on the writ of replevin on the amended petition above referred to.) It was further alleged that petitioner Bushman claimed the diamond ring for the law firm of Irwin & Bushman and stated that the firm had no intention of giving up the ring.

We quote in full the last three paragraphs of said petition, in which we find the only specific reference to the pending replevin suit:

"Your petitioner further respectfully shows the court that the said diamond ring in question was unlawfully taken from his person and is now being unlawfully detained from him; that said diamond ring has no connection with and is in no wise material to the charge now pending against 'Mike Mlongian' in the Circuit Court of Cole County, Missouri; your petitioner further respectfully represents to the court that he did, on the 17th day of February, 1928, file a replevin suit in the Circuit Court of Cole County, Missouri, and secured therein a writ of replevin directing L. C. Withaup, Sheriff of Cole County, Missouri, W. C. Irwin, Sam Bushman, and the law firm of Irwin & Bushman, any or either of them, to deliver the said diamond ring to the Coroner of Cole County, Missouri, who was at the time in possession of a good and sufficient bond in the amount of three thousand ($3000) dollars (double the amount of the value of the diamond ring aforesaid) in compliance with the statute in such cases made and provided; that although said writ in replevin was duly served upon L. C. Withaup, W. C. Irwin, Sam Bushman and the law firm of Irwin & Bushman, aforesaid, by the said Coroner of Cole County,

Missouri, and demand made upon each of them for delivery of said ring to the said coroner, such delivery was and still is by each and all of them refused.

"Your petitioner further respectfully represents to the court that the said diamond ring is by the said L. C. Withaup, W. C. Irwin, Sam Bushman and the law firm of Irwin & Bushman and each of them, being unlawfully, wrongfully and maliciously withheld and detained from your petitioner and that he is in danger of being deprived of his personal property, to-wit, the said diamond ring, and unless the said ring is restored to him he is in grave danger of losing the same.

"Wherefore, your petitioner prays the court that an order issue directing the said L. C. Withaup, W. C. Irwin, Sam Bushman and the law firm of Irwin & Bushman, either and all of them, to restore to your petitioner the diamond ring as aforesaid and for such other and further relief as to this court may seem meet and proper, and for his costs in this behalf laid out and expended."

On the same day, to-wit, February 20, 1928, the judge of said Cole County Circuit Court, directed to the said sheriff and to the petitioners herein his order or citation which, omitting formal parts, was as follows:

"It appearing to the court by the verified petition of Nerses Kavorkian that you and each of you are detaining and withholding from the said petitioner certain personal property, to-wit: One diamond ring, containing a diamond stone of the weight of about three carats and of the value of fifteen hundred ($1500) dollars to which said petitioner claims all right, title and interest, and this court being willing that justice be done,

"Now, therefore, you and each of you are commanded to be and appear before Henry J. Westhues, Judge of the Circuit Court of Cole County, Missouri, on Saturday, the 25th day of February, 1928, at the hour of three o'clock P. M. then and there to show cause, if any you have, why such personal property, to-wit, the diamond ring aforesaid, should not be restored then and there to the petitioner aforesaid; and have you then and there this writ, and hereof fail not at your peril."

Such order of the court was served on Sheriff Withaup and petitioners Irwin & Bushman on the same day that it was issued. Thereafter said petitioners filed their demurrer, as follows:

"Come now Sam Bushman and W. C. Irwin and demur to relator's petition and as grounds therefor say that said petition states no cause of action whatsoever and that said petition shows upon its face that the petitioner is not entitled to the relief prayed for, and they respectfully move the court to quash the citation issued thereon."

26

On February 25, 1928, the following order of court was entered in said *ex parte* proceeding.

"Now on this the 25th day of February, 1928, the same being one of the days 'of the adjourned term of the regular February term of the Circuit Court of Cole County, Missouri, the above entitled cause coming on for a hearing and all parties being present and by their attorneys, and the said L. C. Withaup, W. C. Irwin and Sam Bushman file their demurrer to petition heretofore filed by said petitioner, Nerses Kavorkian, and said petitioner asks leave of court to amend by interlineation and which said leave to amend by interlineation is hereby granted, to which said petition as amended the said parties, L. C. Withaup, W. C. Irwin and Sam Bushman refile their demurrer; and the said demurrer is taken up by the court and after reading all of the pleadings and after having heard counsel in said cause and their arguments thereon, the court considering the same does hereby overrule the said demurrer and giving the said parties, L. C. Withaup, W. C. Irwin and Sam Bushman and the law firm of Irwin & Bushman, leave to plead further and said parties announce to the court while in session and in open court that they refuse to plead further.

"Whereupon, the court orders and decrees, that the Sheriff, L. C. Withaup, W. C. Irwin, Sam Bushman and Irwin & Bushman, deliver to the clerk of this court, the ring in question, for safe-keeping for the legal owner thereof when the same is finally determined and the replevin suit as heretofore filed is finally settled and disposed of and that the said parties shall have time until March 5, 1928, to deliver the said diamond ring in question to the said circuit clerk of this court, or to show cause at that time why they cannot comply with this order."

It will here be noted that the court did not order the diamond ring turned over to Kavorkian in accordance with the prayer of his petition in the ex parte proceeding, but directed the sheriff and the petitioners to "deliver to the clerk of this court, the ring in question, for safe-keeping for the legal owner thereof when the same is finally determined," etc.

On March 5, 1928, the day when the court directed the diamond ring to be turned over to the clerk, Sheriff Withaup filed his answer and return to the citation denying that he had possession of said diamond ring, but admitting possession of it at a former time, and alleging that the diamond ring was delivered to him as part of the property of Kavorkian while he was under arrest; that said ring was thereafter returned to said Kavorkian by the sheriff and thereupon said Kavorkian "made a gift of the same to your answering defendant and thereafter it became and was the property of this answering de-

fendant; that said gift was made by the said Nerses Kavorkian to this answering defendant without solicitation, without promise of reward and as the free and voluntary act of the said Nerses Kavorkian; that this defendant does not now have the possession or the control of said ring.''

On the same day petitioners Irwin & Bushman filed their answer alleging, among other things which we do not deem relevant here, that the court had no jurisdiction ''to hear, try and determine the rights of property to [in] the proceedings now instituted on behalf of the said Nerses Kavorkian;'' that petitioners are holders of said diamond ring under claim of ownership thereof, subject to any lien the First National Bank of Jefferson City may have thereon. A number of allegations are then made tending to reflect upon the good faith of Kavorkian's counsel in instituting the replevin suit, as well as the *ex parte* proceedings. We do not deem such allegations pertinent to any issue involved. Petitioners' answer concludes with an allegation of knowledge on the part of said attorney that Kavorkian had given the ring to the sheriff.

On March 10, 1928, upon motion of counsel for Kavorkian, the court struck out the answer of petitioners Irwin & Bushman. Thereupon they announced in open court ''that they will not produce the said diamond ring in question and further inform the court that he can let the record show that they refuse and will not produce the said diamond ring.''

Thereupon the court found that the diamond ring was admitted to be in the possession of petitioners and that they refused to comply with the order of the court to deliver said ring to the clerk of the court, and further found petitioners guilty of contempt of court and ''that they be held in contempt of this court and the said parties and lawyers are hereby held in contempt of this court until they comply with the orders of this court and until they turn over the said diamond ring in question to the clerk of this court, and if they refuse to do so that they remain in the custody of the sheriff until they comply with this order.''

No contention is here made that petitioners were not properly adjudged to be in contempt of court in refusing to obey the court's order, if the order was one which the court had jurisdiction to make in the proceedings pending before it. The sole question for decision is the power of the court to make and enforce the order it made.

It may be laid down as an uncontroverted proposition of law that ''disobedience of a void mandate, order, judgment, or decree, . . . is not contempt.'' [13 C. J. 13; In re Letcher, 269 Mo. 140, 190 S. W. 19, and cases cited.]

28

Judicial proceedings are not valid unless they accord to the parties thereto due process of law. Judgment can be lawfully rendered only after hearing and trial. All judicial proceedings without such hearing are invalid and without binding force and effect. [Ex parte Wall, 107 U. S. 265; Hovey v. Elliott, 167 U. S. 409.] Unless the order of the Cole County Circuit Court here under review was entered after according to petitioners their day in court and an opportunity to be heard in the manner and under the safeguards laid down in the State and Federal constitutions, such order had no validity and petitioners could not lawfully be adjudged in contempt of court after disobeying such order. [In re Letcher, supra, l. c. 151.]

The proceeding here under review is anomalous to say the least. The petition filed in ''Ex Parte: Nerses Kavorkian #5720'' does not purport on its face to have any connection whatever with the replevin suit of Kavorkian v. Withaup, Irwin and Bushman #5716. Had it purported to be in aid of the replevin suit, the only proper order which could possibly have been made would have been one requiring petitioners to turn over the diamond ring to the coroner to be by him delivered to Kavorkian under the writ of replevin by virtue of his replevin bond. But had the prayer of the petition in the *ex parte* proceeding been granted, petitioners would have been required to turn over the diamond ring directly to Kavorkian independent of and without the protection of the replevin bond.

Replevin is merely an action for the possession of specific personal property in the possession of the defendant. The property remains in defendant's possession until the right of possession is determined at the conclusion of the case, unless plaintiff becomes entitled to the custody of the the property *pending the determination of the case* by giving the statutory replevin bond. Even then the defendant is entitled to keep the property by giving the statutory bond (Sec. 2075, R. S. 1919), unless plaintiff has filed an affidavit making the allegations specified in Section 2077, Revised Statutes 1919. The giving of such bonds determines nothing concerning the ultimate right of the parties to the possession of the property. They simply determine the right to its custody, pending the outcome of the suit. When plaintiff in a replevin case gives the statutory replevin bond, it is the duty of the officer to seize the property and to turn it over to plaintiff's custody. Ordinarily the replevin writ avails plaintiff nothing unless he can locate the property and point it out to the officer, who must then seize it under his replevin writ, if he can do so without violating certain other rights of the defendant, which are not here involved. Where property claimed by plaintiff cannot be seized under the replevin writ, a more appropriate remedy would be an action in damages as for conversion of the property.

But assuming, without so deciding, that the court, before which a replevin suit is pending, may properly cite a defendant who admits he has possession of the property, but conceals it and refuses to deliver it to the officer, and may compel such defendant to deliver the property to such officer under the penalty of punishment for contempt of court, yet such order was not sought in this case. The petition filed in the *ex parte* proceeding was given a different title, took a different case number and did not on its face purport to be in aid of the replevin suit. It asked that the diamond ring be turned over to Kavorkian—which is the relief usually sought in a replevin suit —without subjecting Kavorkian to any of the liabilities imposed upon the plaintiff in a replevin suit by the giving of the bond required to authorize delivery to him of the property seized. Without treating the petition in the *ex parte* proceeding as being filed in aid of the replevin suit, we can conceive of no theory on which such petition stated any grounds authorizing the court to take the diamond ring from petitioners and to compel them to deliver it to any one. The only officer to whom they could possibly have been compelled to deliver the ring, had the petition been treated as filed in aid of the replevin suit, would have been the coroner. The petition was plainly demurrable and the court erroneously overruled petitioners' demurrer thereto. While petitioners announced that they refused to plead over, yet they subsequently tendered an answer which the court permitted them to file and the court likewise erred in striking out such answer, thereby denying to petitioners a hearing under the petition filed by Kavorkian.

The trial court realized that the prayer of said petition to compel petitioners to restore the property to Kavorkian could not lawfully be granted and therefore the court undertook to compel petitioners to deliver the ring to the clerk of the court. On what theory could this be done? Not on the theory that the *ex parte* petition was in aid of the replevin suit (despite its failure to disclose such purpose), because the only valid order which could be made in such case would be to require petitioners to deliver the ring to the coroner, in which event they would be protected in their alleged property rights by the replevin bond given to said coroner.

The order of the court could not have been made to protect property in the custody of the law on the theory that it was part of the evidence against Kavorkian in the criminal prosecution. The petition alleged that the diamond ring could serve no such purpose and the order made affirmatively shows that it was not made for any such purpose when it required that the diamond ring should be delivered to the clerk "for safe-keeping for the legal owner thereof when the same is finally determined and the replevin suit as heretofore

filed is finally settled and disposed of.'' Apparently the court undertook to make the order in aid of the replevin suit.

The order made by the court did not purport to be made under Section 4119, Revised Statutes 1919. That section reads as follows:

''Any magistrate who shall commit any person charged with an offense to jail, or by whom any vagrant or disorderly person shall be committed, shall cause such person to be searched, for the purpose of discovering any money or property he may have; and if any be found, the same shall be taken into possession by the sheriff, and applied to the support of such person while in confinement, and to the payment of any costs which may be adjudged against him on account of the offense for which he is charged.''

We are not here concerned with the propriety of the act of the sheriff in accepting a valuable gift from a prisoner in his custody. The sheriff is here on trial neither for that act, nor for withholding the ring after the making of an order upon him to produce it. We will assume, for the purposes of this opinion, that the court, during the pendency of the criminal prosecution against Kavorkian and proceeding appropriately under Section 4119, could have compelled the sheriff to turn the ring over to the coroner, if it had appeared that the sheriff had the ring. It may also be assumed that the court, proceeding likewise under Section 4119, either on its own motion or the motion of Kavorkian, could have compelled petitioners to turn over the ring to the sheriff (or coroner). But this could only have been done on the grounds authorized by Section 4119, to-wit, that the property might be subjected to the support of Kavorkian while in confinement and to the payment of any costs which might be adjudged against him at the conclusion of the criminal prosecution.

Section 4119 cannot be construed to authorize the court to order petitioners, who claim legal title to the diamond ring, to turn it over to the *clerk*, an officer not so authorized by said section, and especially to turn said ring over to the clerk to abide the determination of the issue as to the title to said ring as between petitioners and Kavorkian neither of whom have any rights to be protected by the court under said Section 4119.

Manifestly, the court was not attempting to proceed under Section 4119. The petition in the *ex parte* proceeding discloses that a portion of the property taken off of Kavorkian in New Jersey and turned over by the New Jersey officers to Sheriff Withaup was delivered to Kavorkian's attorney by Withaup upon Kavorkian's written order. That property was just as much subject to the provisions of Section 4119 as was the diamond ring claimed by Withaup to have been given to him by Kavorkian. If the court was proceeding under Section 4119 and made the order upon its own motion for the

purpose of subjecting Kavorkian's property to his support during his confinement and to the payment of costs, if any, the court would very probably have cited Kavorkian's attorney also and compelled him to return the property he received. Its failure to make such an order is quite convincing proof that the court did not have Section 4119 in mind as authority for making the order it made.

We have been cited to no authority justifying the order actually made. Petitioners cannot be adjudged to be in contempt for disobeying an unauthorized order merely because, forsooth, the court might have made a valid order on them to deliver the ring to the sheriff under Section 4119, or possibly to preserve the ring as evidence in the case.

In defense of any claim made by Kavorkian for the return of the ring to him, petitioners are entitled to a hearing on their claim of title and to a jury trial upon that issue, if they desire it. They have not been accorded such hearing. The order made was unauthorized and petitioners could not lawfully be committed for contempt in refusing to obey it. Petitioners are entitled to be discharged and it is so ordered.

*White, Ragland, Atwood* and *Graves, JJ.,* concur; *Walker, C. J.,* dissents in separate opinion, in which *Gantt, J.,* concurs.

WALKER, C. J., (dissenting).—I do not agree with the reasoning employed nor the conclusion reached by my learned brother in the majority opinion prepared by him in this case.

The petitioners seek relief under the auspices of the writ of *habeas corpus.* This writ cannot be better defined than the process designed and employed to afford summary relief against an improper restraint of personal liberty. It is only when it is invoked for that purpose under a sustaining state of facts that the granting of the same is authorized. Sanctioned under other circumstances or conditions, as sometimes happens in the granting of the other prerogative writs, it may result in an interference with the exercise of the legitimate power of a subordinate tribunal and thus thwart the proper administration of the law.

The unadorned facts, considered in the light of the applicable law, will enable it to be conclusively determined whether the writ herein prayed for should be granted.

The prisoner's ownership of the property at the time he was taken into custody by the sheriff is conceded. Otherwise the sheriff—according to the construction placed upon the facts by the petitioners—could have acquired no claim to ownership in the ring, either by gift or otherwise, and hence could have conferred none on the petitioners in satisfaction of a feigned or real obligation or for any

other purpose. We will later more fully show that the ownership of the ring being, under the conceded facts and the plain provisions of the law, in the prisoner at the time he was arrested, has thus continued. So far, therefore, as concerns the facts in this case and its proper disposition under the law, the proceedings in replevin may be relegated to the limbo of irrelevant matter.

Putting it mildly, as courtesy prompts and not with that verbal force the facts may warrant, the majority opinion declares that if the trial court was empowered to make any order in regard to the custody of the ring it was to require it to be delivered to the coroner and not to the clerk of the court. There is no authority, either in custom or the code, for such a course of procedure. Our circuit courts are possessed of general jurisdiction for the full and complete disposition of any cases within their purview. Thus empowered they may, not only by custom but under a well recognized common-law procedure often exercised, order property in their custody deposited in the "registry of the court," which means the clerk.

Under the statute (Sec. 4120, R. S. 1919) property which comes into the hands of a sheriff, coroner, constable or marshal, which is alleged to have been stolen, purloined, embezzled or obtained by false pretenses or by any of the modes denounced in the article concerning offenses against public or private property, shall be held by such officer, subject to the order of the court or the officer authorized to direct the disposition of the same. There is no fact, express or implied, to support the pretense that this ring came into the possession of the sheriff under any of the conditions enumerated in the statute above cited; and the coroner never having had possession of it, the statute has no application to him. There is no other statute conferring power upon a coroner in regard to the custody of property or authorizing a court to order the exercise of such power. Other than in the exercise of a "Coroner's Quest," as the old common law designated the duties of that officer, he is only empowered, under our statutes, to serve process when the sheriff is disqualified (Sec. 11648, R. S. 1919); and to discharge the duties of the latter when the office of sheriff shall become vacant (Sec. 11649, R. S. 1919).

It is, to our mind, begging the question to contend that the order of the court under which the petitioners are held was not made under Section 4119, Revised Statutes 1919. The facts in the case and not conclusions based upon inapplicable promises will best serve to determine this question. The property was, at the time of the prisoner's arrest, in his possession and his ownership was unquestioned. A controversy arose in regard to its ownership and the court ordered it into the custody of the clerk. This order did not and the court was not authorized to waive the State's paramount lien on the property. The jurisdiction of the court was complete, both as to the persons

and the subject-matter, and its order, aside from its unquestioned control (which we will refer to later) by reason of the legal custody of the property, clothed it with ample power in the proper administration of justice to provide for the safe-keeping of the property until the State's lien had been satisfied and any other controversy in regard thereto had been determined. The action of the trial court in the premises was, therefore, not only supported by precedent, but was a wise and wholesome exercise of its power.

As we interpret the majority opinion it seeks by subtle argumentation to assail the legality of the action of the trial court in committing the petitioners, not on account of a lack of power, legitimately exercised, but by the interposition of a course of procedure pursued by the petitioners, based on a claim of ownership, which we have shown and will further show has no legal basis.

Having disposed of what we regard as matter extraneous to the disposition of this case, we come to a consideration of the facts vitally necessary to its proper determination. Repetitions, although they savor of prolixity, may be employed to give emphasis to the relevant facts which are as follows:

The Sheriff of Cole County held the prisoner under legal process; any property found on his person, therefore, the sheriff was authorized to take into his possession and it became thenceforth in the custody of the law and primarily subject to the State's lien for the purpose stated in the statute. Thus held, the owner was not authorized to dispose of the same by gift or otherwise. For a like reason the sheriff could not legally accept the property as a gift and thereafter assert ownership of it. The statute is plain and its meaning and purpose unmistakable. It is, in effect, as follows: A person charged with an offense and committed to jail, shall be searched and any money or property found in his possession shall be taken into custody by the sheriff and applied for the support of the prisoner while in confinement and to the payment of costs which may be adjudged against him. [Sec. 4119, R. S. 1919.] In Holker v. Hennessey, 141 Mo. 528, this statute was construed with the resultant conclusion that property rightfully taken from a prisoner under the authority of the statute is in the custody of the law and is subject to the order of the court and while so held it is immune from attachment, execution or garnishment. This language declares in no uncertain terms the paramount nature of the State's lien. The trial judge, therefore, was well within the exercise of his power and regardful of the performance of his duty, under the law, in ordering the petitioners to surrender this property into the custody of the clerk of the court, which means nothing more than the continuance of the custody of the law as directed by the court. The reasonableness of the order, for a re-

fusal to comply with which the petitioners are in contempt, is attested by its terms, which are as follows:

"*Whereupon*, the court orders and decrees, that the Sheriff, L. C. Withaup, W. C. Irwin, Sam Bushman and Irwin & Bushman, deliver to the clerk of this court, the ring in question for safe-keeping for the legal owner thereof when the same is finally determined and the replevin suit as heretofore filed is finally settled and disposed of and that the said parties shall have time until March 5, 1928, to deliver the said diamond ring in question to the said circuit clerk of this court, or to show cause at that time why they cannot comply with this order."

This order recognizes, as it need not have done, the existence of the petitioners' claim to title and affords them ample opportunity to test the merits of the same subject to the satisfaction of the State's lien. This was more than they were entitled to, but of this they cannot complain, for however stable or flimsy may be their title, they are afforded an opportunity to have it determined in an orderly manner. It cannot be said, therefore, that the petitioners have been denied due process of law, or that any right to which they are entitled have been denied to them. Their contempt was flagrant and, committed as it was by officers of the court, inexcusable.

I am, therefore, of the opinion that the court's order of commitment was authorized and that the petitioners should be remanded to the custody of the sheriff. *Gantt, J.*, concurs in this opinion.