LINDBERG CADILLAC COMPANY, a Corporation, (Plaintiff) Respondent,

v.

Leonard ARON, (Defendant) Appellant.

No. 31419.

St. Louis Court of Appeals.

Missouri.

Oct. 15, 1963.

———————

Rosenblum & Goldenhersh, Merle L. Silverstein, Emanuel Shapiro, St. Louis, for appellant.

Boyle, Priest, Elliott & Weakley, Howard Elliott, Edward D. Weakley, Howard Elliott, Jr., St. Louis, for respondent.

WOLFE, Judge.

This is an action in fraud in which the defendant is charged by the plaintiff with concealing defects in an automobile which he traded to plaintiff in part payment of the purchase price of a new car which the plaintiff sold to him. The trial was to the court, which found for the plaintiff in the sum of $759.00 and costs. After an unavailing motion for a new trial, the defendant appealed.

The plaintiff company was engaged in the sale of automobiles. Its business was located in the City of St. Louis. The defendant was in the vending machine business in St. Louis. He had some trucks and a Cadillac and Imperial automobiles which he used in connection with his business.

He decided to trade in his 1957 Imperial on another Cadillac. In June of 1959 the Imperial was brought into the plaintiff's place of business and was appraised by the salesmanager in charge of such work. He examined the automobile and appraised its value to be $2,165 at that time. No deal was made then because the parties were unable to reach a trade-in figure that was agreeable to both.

In the month of October, 1959, during a cold spell, the coolant in the Imperial froze. The car was taken to a filling station which Aron, the defendant, patronized. According to the testimony of the filling station operator, defendant told him that the motor had frozen and he wanted it

checked to see if it had cracked. The filling station operator thawed out the motor and placed the car on a grease rack to check it over. He testified that he found two cracks on each side of the motor block. He said that he told Aron, the defendant, that the block was cracked. He estimated the cost of a new block to be in the neighborhood of four or five hundred dollars. He told Aron that he could put a "K and W sealer" in the cracks, but that it would be "strictly temporary". He also suggested that if the car was to be traded in, the cracks filled with the sealer could be covered with Permatex, which would conceal the filled cracks. Permatex is a gasket sealer and could serve no purpose other than to conceal the filled cracks in the motor block. He said that Aron told him to do this work, and that he did a "pretty smooth job" and that the Permatex concealed the cracks.

About the 20th of November, 1959, Aron drove the Imperial into the Lindberg Cadillac Company's service department for appraisal as a trade-in. It was there about half an hour, and he then drove it away. Aron had not driven the Imperial after the crack sealer was put in until the time he drove it to the plaintiff's place of business for the purpose of a trade-in. Defendant Aron testified that he discussed the condition of the Imperial in plaintiff's office when they were attempting to close the deal. He said that they agreed that it needed floor mats, that the motor was leaking oil and needed repair, and that the fenders needed fixing. He did not tell either the salesman or the salesmanager about the cracked block. Thus the car which had been appraised in June was reappraised on November 20, and an agreement was eventually reached to allow $2,290 for the Imperial on the purchase price of a new Cadillac. There was testimony that the actual value of the Imperial as traded in, assuming that the block was not cracked, was appraised at $1,720.00, and $259.00 was later spent by the plaintiff on reconditioning it for sale. There was also testimony that the book value of the car was $1,979.00.

The salesmanager for the plaintiff company, who made the appraisal of the car, drove it for a few minutes on November 20. He checked the heat gauge to see if it was overheating. This would normally disclose a cracked motor block. He also checked for water leaks, and found none. After the appraisal and sale, the car was reconditioned in the normal course of business for sale. This usually took about 30 days.

On December 21, the Imperial as reconditioned was sold for $2,476.08. The purchaser returned the next day and complained that it was overheating. The car was taken to the plaintiff's shop to verify the purchaser's complaint. It was found that the motor block had the cracks in it, and the plaintiff refunded to the purchaser the money he had paid for the car. The plaintiff then sold the Imperial, known to the buyer to have a cracked motor block, for $1,200.

The defendant, testifying in his own behalf, said that he did not know what a motor block was. He said that when the Imperial was frozen, he took it to the filling station because they were supposed to have put anti-freeze in the radiator. He testified that the station attendant said that he would take care of what was wrong, and kept the car for about a day. The attendant said nothing to him about the cracked motor block. He said that after he was informed of the cracked block by the plaintiff, he never went to the filling station attendant about the matter nor had any communication with him in relation to it. Defendant also testified that he had been sentenced to three and one-half years for counterfeiting cigarette tax stamps, and at the time of trial he was on probation for a period of seven years.

As stated, the court found for the plaintiff in the sum of $759.00, and the defendant appealed.

■ The first point he raises is that the appellant failed to make a prima facie showing of fraud, and that the court should have

found for the defendant. The appellant asserts in support of this that he made no misrepresentation, and that his mere silence cannot be held to have been fraudulent where the matter was open to investigation by the party alleged to have been defrauded. This constitutes a complete disregard of the facts. Silence can be an act of fraud. In one of our earliest cases, McAdams v. Cates, 24 Mo. 223, 1. c. 225, our Supreme Court stated:

"If, in a contract of sale, the vendor knowingly allow the vendee to be deceived as to the thing sold in a material matter, his silence is grossly fraudulent in a moral point of view, and may be safely treated accordingly in the law tribunals of the country. Although he is not required to give the purchaser all the information he possesses himself, he can not be permitted to be silent when his silence operates virtually as a fraud. If he fails to disclose an intrinsic circumstance that is vital to the contract, knowing that the other party is acting upon the presumption that no such fact exists, it would seem to be quite as much a fraud as if he had expressly denied it, or asserted the reverse, or used any artifice to conceal it, or to call off the buyer's attention from it."

The reason for the rule is that since matters are not what they appear to be and the true state of affairs is not discoverable by ordinary diligence, deceit is accomplished by suppression of the truth. 23 Am.Jur. Fraud and Deceit, § 84, p. 863.

We have in the facts before us more than a failure to speak. There is also a positive fraudulent concealment. In the case of Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083, decided by this court, we have before us facts quite similar in effect to those here under consideration. There a fraudulent seller turned back the speedometer in the car sold to 22,400 miles, when the car had in fact been driven 48,800 miles. There was no verbal or written representation by the seller, but the buyer, relying upon the mileage registered on the speedometer, purchased the car. We held that the buyer had been defrauded by the deception, stating: "* * * a representation is not confined to words or positive assertions; it may consist as well of deeds, acts, or artifices of a nature calculated to mislead another and thereby to allow the fraud-feasor to obtain an undue advantage over him." See, also, Hutchings v. Tipsword, Mo.App., 363 S.W.2d 40, 1. c. 45. The acts of the defendant as stated above were designed to, and did, defraud the plaintiff, and there is no merit to the contention that a case in fraud was not made.

■ The second point raised is that the court erred in its finding as to damages. The court reached the sum of $759.00 as damages by allowing $500.00 for the motor block and $259.00 for the sum spent by the plaintiff in reconditioning the car. It is asserted that the proper measure of damages is the difference between the actual value and the value the car would have had if the representation had been true. We agree that such generally is the proper measure of damages. Salmon v. Brookshire, Mo.App., 301 S.W.2d 48.

■ In applying the rule we must consider the nature of the fraud committed as it reflects upon the value of the property as fraudulently represented. A trade was made here with the full knowledge that the car was to be reconditioned for sale. It was represented as a car that could be so reconditioned by certain minor repairs caused by normal use. It was known by the defendant that the expenditures that the plaintiff intended to make would not make the car serviceable for resale, as the car, after such repairs, could not honestly be sold for its intended use. The fact that the court, in reaching the amount of damages, found the cost of the block and the cost of the repairs to be the total, was not erroneous, as both went to the value of the car as represented and its actual value.

Shechter v. Brewer, Mo.App., 344 S.W.2d 784; McFarland v. Cobb, Mo.Sup., 64 S.W. 2d 931; Monsanto Chemical Works v. American Zinc, Lead & Smelting Co., Mo. Sup., 253 S.W. 1006.

We find no error present, and the judgment is affirmed.

RUDDY, P. J., and WILLIAM M. KIMBERLIN, Special Judge, concur.

ANDERSON, J., not participating.