F. H. AUFFENBERG, James A. Auffenberg and R. J. Auffenberg, as Trustees of Jim Tancill Auto Sales, Inc., a corporation, Plaintiffs-Respondents,

v.

Floyd HAFLEY and Dorothy Hafley, Defendants-Appellants.

No. 33581.

St. Louis Court of Appeals, Missouri.

July 28, 1970.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 11, 1970.

Joseph Langworthy, Pacific, for appellants.

Hinkel & Carey, Henry C. Hinkel, Harold D. Carey, Clifford L. Goetz, Robert R. Sandcork, St. Louis, for respondents.

WEIER, Commissioner.

This is a suit to replevin an automobile. The plaintiff received possession upon filing affidavit and bond. The answer alleged fraud and prayed for a return of the property. A counterclaim prayed damages for fraud. At the close of all the evidence, plaintiffs' motions for directed verdict on the replevin action and the counterclaim were sustained. By this appeal, defendants challenge this ruling of the court. Upon such appeal, we consider the evidence which sustains the defense and counterclaim to test the validity of the court's judgment.

Defendant, Dorothy Hafley, worked at a factory some distance from her home. She used a 1959 automobile to drive back and forth from home to work. In July of 1963, she and her husband, the defendant Floyd Hafley, went to the sales office of Jim Tancill Auto Sales, Inc., to look for a replacement car. They investigated some new 1962 model automobiles unsold during the model year, and some demonstrators, but none pleased them. According to the testimony of defendants, they informed the salesman they wanted to purchase a new car. They were then shown a 1963 model which was represented to them to be new. According to their version of the facts, when a soiled spot was discovered on the back seat, the salesman told Mrs. Hafley that these automobiles were transported with the hub caps placed inside and the spot would clean right off. Again when they were given a demonstration ride, the radio was turned on very loud and they heard no rattles. Another man in the sales office also represented the car to be new. One set of papers was prepared which the Hafleys read carefully. This set indicated the car to be new. These were signed by the defendants and the office salesman took them to be checked.

He returned and informed the defendants the papers would have to be re-written because of failure to make enough copies. He then went to another room, remained some time and came back with a new set of papers. These were represented to be just like the others. The defendants, after glancing over them, signed. They did not notice that this set of papers showed the car to be used. The price of the 1963 automobile was $2,677.00. $600.00 of this amount was paid by transfer of title of the 1959 car to Tancill. The balance of $2,077.00 was paid by note of both defendants, payable to Tancill, and secured by a chattel mortgage. Payment of the note was due July 26, 1963. Title to the 1963 automobile was assigned to Dorothy E. Hafley.

Trouble came almost immediately after closing the deal. Mrs. Hafley testified when she drove to work the next morning after driving over their uneven private road from her home to the highway, the car started vibrating and made an unusual noise. It was then examined at defendants' request by Chester Sifford, a mechanic and automobile repair shop proprietor, with many years experience, who testified the car had been badly wrecked and poorly repaired. The left side rail of the frame, from the front back about half its length, had been bent and then crudely straightened. The front crossmember of the frame had been partially torn loose at its weld joint with this side rail.

Francis H. Auffenberg, a substituted plaintiff and one-time president of Jim Tancill Auto Sales, Inc., said the recorded mileage of the 1963 automobile had been turned back to zero on the speedometer after Tancill acquired title. He admitted Charles E. Smith was the former owner but denied any knowledge of the damaged condition of the automobile. Later, Smith was called to the witness stand and related that he bought the car from another dealer in November of 1962; that on May 12, 1963, when there were about 6000 miles on the car, the car had been involved in an accordian type accident with one vehicle striking it in the rear and the other colliding head-on.

After discovery of the damaged condition of the automobile, Hafleys did not pay the amount due Tancill on the note. Tancill then brought the replevin suit on August 26, 1963, and upon bond being executed, the sheriff seized the car and turned possession over to Tancill.

When the 1963 automobile was taken from her, Mrs. Hafley sought to recover her 1959 car, and during the last part of September or the first part of October, 1963, she went to Tancill's sales lot, found her car, and drove it to her home. The car had been sitting outside and had dirt and tree sap on it. It had been damaged underneath the door. The emergency brake was bent double.

To the replevin petition a timely motion to dismiss was filed by defendants on the ground that the affidavit filed with the petition omitted the value of the 1963 automobile. The court did not act upon this motion until two years later, at which time, on September 23, 1965, the motion was sustained and plaintiff was granted five days in which to file an amended affidavit and petition. The amended petition and the amended affidavit alleged the value to be $2,500.00. Defendants then filed a motion for return of property, again based on the omission of the value of the car in the first affidavit. In rapid succession defendants filed answer and plaintiff moved to strike certain paragraphs therein. The paragraphs objected to were those wherein defendants had affirmatively alleged facts substantially similar to those recounted herein and which were relied on to sustain their charge of fraud. Thereupon, on October 28, 1965, the court overruled defendants' motion for order of return of the automobile. Defendants moved for a new trial as to this ruling and upon denial, filed a premature appeal to this court.

The trial court sustained the motion to strike the paragraphs of the answer pleading fraud in the inducement of the sale. An amended answer containing the same paragraphs met the same fate on motion of plaintiff on March 21, 1968. Then upon the same day defendants filed their counterclaim, setting out the same or similar allegations of fraud. They alleged a difference in the reasonable market value of the automobile as represented, and as it was in fact, at the sum of $1,500.00, and punitive damages of $10,000.00, for which they prayed judgment against the plaintiff corporation. Plaintiff filed a reply.

We will not refer to the rest of the numerous pleadings other than those that might be pertinent in the discussion of the points raised.

On January 1, 1969, plaintiff Jim Tancill Auto Sales, Inc. was no longer in existence, its charter having been cancelled by the Missouri Secretary of State for failure to file its annual registration report and anti-trust affidavit. Although the transcript of the record does not show this, it was agreed by the parties in their briefs that upon motion, plaintiffs Auffenberg, whose names appear in the style of the case, were substituted as parties plaintiff. Ostensibly they were the officers and directors of the company at the time of dissolution and were substituted under the authority of Section 351.525, RSMo 1959, V.A.M.S. (later amended, Laws 1969, H.B. No. 422, § 1).

Trial commenced on May 26, 1969 and was concluded on May 27, 1969, at which time the court sustained plaintiffs' motions for directed verdict not only as to the replevin action but also as to the counterclaim. Defendants challenge the judgment for many reasons, but we will first proceed to those involving the replevin action we consider of greatest importance. Defendants maintain the court erred in sustaining the motion for directed verdict on plaintiffs' cause of action in replevin because the evidence clearly raised issues of fraud in the inducement and fraud in the execution and thereby violated defendants' right of trial by jury guaranteed to them by Section 22(a), Article I, Constitution of Missouri, 1945, V.A.M.S.

As to this last contention, a party to a lawsuit has a right to have his controversy decided by a jury if the pleadings and evidence support such submission. This constitutional provision does not necessarily apply to the action of a trial court in sustaining a motion for a directed verdict. Knight v. Calvert Fire Ins. Co., Mo.App., 268 S.W.2d 53, 55 [4]. Nor does the assertion of a denial of this constitutional right involve a construction of the constitution so as to vest jurisdiction in the Supreme Court of Missouri since the language of the constitutional provision is clear and mere error in the denial of a constitutional right does not take a case out of the jurisdiction of this court. Knight v. Calvert Fire Ins. Co., Mo., 260 S.W.2d 673, 674 [3]. Our courts recognize that a trial court may direct a verdict for plaintiff at the close of defendant's case when the facts establish as a matter of law a right to that verdict in plaintiff. This may occur in situations, described as "unusual" (Rogers v. Thompson, 364 Mo. 605, 265 S.W.2d 282, 287 [1]) or "exceptional" (Zagarri v. Nichols, Mo., 429 S.W. 2d 758, 760 [2]), where defendant in his pleadings or by his counsel in open court, or by his evidence, admits or establishes plaintiff's case; or where there is no real dispute of the basic facts, supported by uncontradicted testimony essential to a claim (or affirmative defense). Rarely is a court in a position to direct a verdict in favor of one who has the burden of proof and never where the issues must be decided upon parol evidence because a defending party is entitled to have the jury pass on the credibility of witnesses and the weight to be accorded their testimony, even though he introduces no evidence. Holtzman v. Holtzman, Mo.App., 278 S.W. 2d 1, 4 [5–6]; MFA Co-op. Ass'n of

Mansfield v. Murray, Mo.App., 365 S.W.2d 279, 287 [9].

Going to the merits of the defense of fraud raised in the replevin action, Mr. and Mrs. Hafley admitted in their amended answer, counterclaim and in their testimony that title to the 1963 automobile had been transferred to defendant Dorothy E. Hafley. In their counterclaim and in their testimony they acknowledged signing and delivering to Tancill a note in the sum of $2,077.00, dated July 24, 1963, and payable July 26, 1963. They retained possession of the car until it was taken by the plaintiff. They further admitted that the note was not paid on the date due and it was not paid at any other time. Their only defense was that of fraud, and the paragraphs so alleging these facts were struck by the court on motion of the plaintiff.

■■■■ Although the plaintiff's petition sought damages, because of unlawful detention, none were proved and none allowed. The court's judgment on directed verdict as to the replevin action limited itself to confirmation of the right of possession in plaintiff and awarding the costs to plaintiff. Replevin is a possessory action and it is incumbent on plaintiff to plead and prove his right to immediate possession of the automobile at the time he files his suit and that the defendant was then unlawfully detaining it. Citizens Discount & Inv. Corp. v. Wood, Mo.App., 435 S.W.2d 717, 722 [5]. The execution of a note secured by a chattel mortgage with right of possession on default gives the promisee a special interest in the mortgaged property which is sufficient to sustain an action in replevin. First National Bank of Clayton v. Trimco Metal Products Co., Mo., 429 S.W.2d 276, 277 [3]. There remains, therefore, only the question of the validity of the defense of fraud, which, if answered affirmatively, would cause the action of the court in directing the verdict on the replevin to be error. If the answer is negative and the defense of fraud can-

not be interposed, then the direction of the verdict on the replevin was correct, since the pleadings and testimony indicated no disagreement between the parties as to title, chattel mortgage, default and possession.

■■■■ Considering again the pleadings and testimony, we are convinced that the defense of fraud as to the replevin action was not a proper defense and could not be pleaded in bar of plaintiff by the defendants. The transaction was a sale. The alleged fraud was discovered after the sale was completed. The payment of the consideration, that is, the delivery of the trade-in automobile and the execution of the note and chattel mortgage, had been consummated and delivery of the sold merchandise accomplished. When the fraud was discovered, defendant Dorothy E. Hafley did not tender back the property to Tancill. She retained it until it was taken from her. In their answer, the defendants prayed that the defective automobile be returned. Their counterclaim alleged the facts of the sale and prayed damages for the fraud. There was no tender of the car to Tancill either before the filing of the replevin suit or after.

■■■■ Where a seller has been guilty of fraud, the purchaser, upon discovery of the fraud has an election of two remedies. Under one he may make a timely rescission of the sale and recover whatever of value he has parted with. Under the other, he may keep the property and recover, by suit or counterclaim, the damages occasioned him by the fraud. The victim of a fraud may elect to pursue one of the remedies, but once having elected, he may not pursue or attempt to intermingle the remedies, for they are wholly inconsistent, the first being a disaffirmance of the contract and the last being an affirmance. An offer to rescind is a repudiation of all right and title to the property and the basis of the right to rescind is a tender of the property back to the seller with reasonable promptness after discovery of the fraud. Aeolian Company of Missouri v.

Boyd, Mo.App., 65 S.W.2d 111, 113; Hostler v. Holland Furnace Company, Mo.App., 327 S.W.2d 532, 534.

Here, the defendants elected to retain and claim the property. There was no tender to the seller; no offer to rescind. Instead the defendants counterclaimed in tort for damages. In a conference with the court, during the trial, defendants' counsel stated that his clients were affirming the sale. By their pleadings, admission and testimony, they affirmed the contract and sought compensation for the fraud. They were therefore bound by the terms of the chattel mortgage. We therefore determine there was no error in directing a verdict for plaintiff on plaintiff's cause of action in replevin. For the same reasons, we see no error in the court sustaining plaintiff's motion to strike the defense of fraud from defendants' answer.

Other points advanced by defendants, which we consider subordinate but still directed to error in the replevin action, were advanced by defendants. In one of these defendants contend that the court erred in denying their motion to dismiss plaintiff's amended petition, for assessment of costs and damages and for forfeiture of the bond for two reasons: 1) that the evidence clearly showed Tancill's charter was forfeited, and 2) that plaintiff Tancill sold the automobile after delivery, although it was in custodia legis.

 With respect to the first reason, defendants develop this theory by saying that even though the trustees may have had the power under Section 351.525, RSMo 1959, V.A.M.S., to prosecute the suit, they are substitute parties and the corporation breached its bond when it ceased to exist. This section provides that the officers and directors of the company in office when the forfeiture occurs shall be the trustees of the corporation and that they "shall have full authority to wind up its business and affairs, sell and liquidate its property and assets, pay its debts and obligations and to distribute the net as-

sets among the shareholders; and such trustees as such shall have power to sue for and recover the debts and property due such corporation, describing it by its corporate name, and may be sued as such; and such trustees shall be jointly and severally responsible to the creditors and shareholders of such corporation to the extent of its property and effects that shall have come into their hands." The forfeiture of the charter effects the dissolution of the corporation but it does not extinguish the debts of the corporation. Wartenbe v. Car-Anth Mfg. & Supply Co., Mo.App., 362 S.W.2d 54, 58 [3]. Simply put, a bond is an instrument that legally binds a party to do a certain act. Stifel Estate Co. v. Cella, 220 Mo.App. 659, 291 S.W. 515, 518 [3, 4]. It is an obligation of the company and upon forfeiture of the charter, it survives as an obligation for which the trustees are responsible to the extent of the property and effects of the corporation coming into their hands. We therefore find no validity in the first reason advanced by defendants.

 As to the second reason, that is, the failure to retain the property, we are referred to the case of Mohr v. Langan, 162 Mo. 474, 63 S.W. 409, 410, which holds that property seized under a writ of replevin and delivered to a plaintiff, remains in custodia legis, with no power on the part of plaintiff to sell while the suit is pending. The decision then goes on to point out that if the plaintiff does sell, he is liable for conversion, provided he loses the replevin suit. In the instant case, the plaintiffs have not lost the replevin case. We should further point out that the giving of the statutory bond merely determines the right of custody of property pending the outcome of the suit in replevin. It does not determine the ultimate rights of the parties to possession of the property. Ex parte Irvin, 320 Mo. 20, 6 S.W. 2d 597, 601 [5]. Even though error may be found in the conduct of the parties who have possession of the property or in the bond itself, it is a bond delivered to the

sheriff, it must be approved by the sheriff and if not sufficient as provided by law, he and his sureties may be liable to the party injured. See Civil Rule 99.03, V.A. M.R.; Section 533.220, RSMo 1959, V.A. M.S. Improper disposition of the property or inadequacy of the bond does not affect the ultimate rights of the parties in the replevin action and those irregularities pointed out here cannot be raised to reverse the judgment of the court which is based upon those ultimate rights.

For the same reasons we overrule the point advanced by defendants to the effect that the court erred in refusing to sustain defendants' motion for an order to compel plaintiff to give a new bond. The motion and contention of error is based upon the termination of corporate existence by reason of forfeiture of the charter so that there was no principal; for the further reason there was only one surety instead of two, as required by Civil Rule 99.03, V.A.M.R.; and the plaintiff, Tancill, had sold the automobile. These theories cannot be used to reverse the judgment of the court in replevin which determines the ultimate rights of the parties to the possession of the property.

Passing to the next principal contention of the defendants, we are requested to reverse the judgment rendered in favor of plaintiffs and against defendants on their counterclaim. In their motion for directed verdict the plaintiffs gave as their ground for the motion a failure by defendants to adduce evidence of damages. In the oral direction of the verdict and again in the formal judgment no reason is stated for the court's decision and none need be given. In the later stages of the trial, it can be seen from the transcript that the court considered the defendants to have placed themselves in a position where they could neither prove nor seek damages for the fraud. In one instance, defendants' counsel asked Mrs. Hafley if she had an opinion as to the actual value of the car when she bought it. An objection was sustained, ostensibly for the reason that defendants in their answer to the replevin petition had admitted the value of the car to be $2,500.00. In a conference with the court and plaintiff's counsel, defendants' attorney offered to prove by Mrs. Hafley that the actual value was as pleaded in the counterclaim, $1,500.00. To this, objection was sustained. Counsel then pointed out there was at least $177.00 difference between the price of $2,677.00 and the figure of $2,500.00, admitted in the answer; but the court reasoned this could not be established as the actual damages since defendants had not paid any part of the $177.-00.

The courts of this state are committed to the "benefit of the bargain" rule as a method of arriving at damages in a case of fraud and deceit. It allows a defrauded party to be awarded the difference between the actual value of the property and what its value would have been if it had been as represented. Smith v. Tracy, Mo., 372 S.W.2d 925, 938 [13]; see also MAI, 2nd Ed., No. 4.03. Applied to a transaction involving the sale of an automobile, the measure is the difference between the actual value of the car and the value the car would have had if the representation had been true. Lindberg Cadillac Co. v. Aron, Mo.App., 371 S.W.2d 651, 653 [2]. Such damages are measured at the time of the transaction. DeBow v. Higgins, Mo., 425 S.W.2d 135, 142 [10].

The date upon which defendants had to prove the actual value of the automobile was July 24, 1963, the date of the sale. This they tried to do through the testimony of Mrs. Hafley, to whom the title had been assigned. Such opinion testimony by the owner was admissible. The weight of such testimony was for the trier of fact. Keeton v. Sloan's Moving & Storage Co., Mo.App., 282 S.W.2d 194, 199 [10, 11]; Langdon v. Koch, Mo.App., 393 S.W.2d 66, 70 [6, 7].

In her answer, Mrs. Hafley admitted the following paragraph found in the amended petition:

"Plaintiff further states that the personal property herein described is of the value of $2,500.00."

This statement was repeated in the affidavit filed with the amended petition. Such verification of value is required therein when the affidavit is filed with the petition or at any other time before rendition of judgment (Civil Rule 99.01, V.A.M.R.), in order that the amount of the delivery bond may be set at a sum·double the value of the property so stated (Civil Rule 99.03, V.A.M.R.). The replevin action itself is a possessory action. The gist of it is the determination of the right to possession at the time of institution of the suit. MFA Co-op. Ass'n of Mansfield v. Murray, supra, Mo.App., 365 S.W.2d 279, 285 [2], 290 [19]. And so facts pleaded and proven must be relevant to the time when the suit is filed and this would include the allegation as to the value of the property affected by the suit. It would be a binding admission on the defendants with respect to value on the date of the filing of the replevin action, but would not commit them as of the time of the sales transaction.

Although by her answer Mrs. Hafley admitted the value of the car to be $2,500.00, and even though this is a judicial admission, binding upon her (Johnson v. Durest, Inc., Mo.App., 224 S.W.2d 611, 616 [7]), it only bound her as to the value of the car on August 26, 1963, when the replevin action was originally filed, more than a month after the sale. This admission might be used to attack her credibility as a witness, but could not conclusively bind her as a judicial admission establishing the value on the date of the sale.

The "benefit of the bargain" rule would seem to be a fair method of evaluating the damage to defendant, Mrs. Hafley, if the jury determined liability against the plaintiffs for fraud and deceit. In examining the reason for the rule many years ago, our Supreme Court in Kendrick v. Ryus, 225 Mo. 150, 123 S.W. 937, 940, stated:

"But for the fact that the purchaser thought he was getting a bargain he might not have made the contract at all. If by fraud and deceit he is induced to believe that he is contracting for a benefit or a bargain, and not merely swapping dollars, why should not the benefits of the bargain be an element in the measure of damages in an action for fraud and deceit? Such benefit would be a matter fully contemplated by both parties. By the purchaser, because, as a rule, trades are not made for the purpose of merely exchanging dollars. By the seller, because he would not falsely represent the character of the property save and except to induce the purchaser to believe that he was procuring a benefit of bargain."

It is true that after the completion of the transaction plaintiffs forced a return of the property by a suit in replevin and Mrs. Hafley persuaded plaintiffs to give her back her old car, but this was after the date of the transaction to which this action of fraud is directed. As stated above, the damages are to be ascertained on the date of the transaction. Mrs. Hafley on this date owned the 1963 car. She had transferred the 1959 car to Tancill and had executed her note. She was entitled on this same day to the "benefit of the bargain" to compensate for the alleged wrong done her. What transpired afterward could be defensive to the tort only if her actions might be considered a compromise and settlement, a waiver, or an estoppel as to her right of action. We find none of these in a review of the evidence in this case and none is pleaded. Even if Mrs. Hafley's proof concerning actual value of the car and value as represented failed, her evidence showed the 1959 automobile which she transferred to Tancill as a part of the consideration had been damaged prior to its

recovery by her and she would have been entitled to at least nominal damages. Fleischer v. Berger, Cohn & Co., Mo.App., 96 S.W.2d 643, 647 [9]. An actionable injury was shown by the evidence. There is, therefore, a right to damages. Where proof of the amount of the loss is absent, at least nominal damages are given. Under such circumstances a court should not direct a verdict for the defending party. Keeton v. Sloan's Moving & Storage Co., Mo.App., 282 S.W.2d 194, 199 [8,9]; Wilson v. Murch, Mo.App., 354 S.W.2d 332, 338 [10, 11]. If the proof succeeded in establishing her loss under the "benefit of the bargain" rule, then the value of the 1959 automobile at $600.00, which was the sum agreed on by the parties at the time of the transaction less any damage suffered by it, could be pleaded and proved as a set-off or recoupment against Mrs. Hafley's damage for the fraud. This is not before us at this time, however, and these matters will have to be determined upon retrial.

■ Our ruling concerning the element of damages might end this already lengthy discussion except for the fact that injury or damage is only one of the nine elements necessary to prove a fraud case and failure to sustain any one of the others would justify the court's ruling directing the verdict against defendants' counterclaim. This is for the reason that if the trial court properly directed the verdict, it would be immaterial that the court may have assigned an erroneous or insufficient reason for its ruling. Powers v. Shore, Mo. (banc), 248 S.W.2d 1, 4–5 [1,2]. As quoted in Powers, the elements of actionable fraud, concisely listed in 37 C.J.S. Fraud § 3, p. 215, are: "(1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. (9) And his consequent and proximate injury." See also

Ackmann v. Keeney-Toelle Real Estate Co., Mo. (banc), 401 S.W.2d 483, 488 [4].

■ From the evidence, it would seem that defendant, Mrs. Hafley, has met, or has attempted after an adverse ruling of the court to meet, the requirements and supply all the elements. Some of the evidence presents a fraudulent concealment similar to that found in Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S. W.2d 1083, where the seller turned back the speedometer in the car sold. Again the evidence is similar to Lindberg Cadillac Co. v. Aron, supra, Mo.App., 371 S.W.2d 651, 653, in that the seller failed to disclose and remained silent on a condition (a cracked engine block) materially affecting the normal use of the automobile. Plaintiffs have failed to point to any failure in the evidence to support a submission to the jury and we find none. The judgment of the court in favor of plaintiffs and against defendants on the counterclaim must therefore be reversed and remanded.

Other points raised will not be discussed since we have either disposed of them in this opinion in ruling on the main issues or they are of no consequence in view of our decision. One matter concerning the cross-examination of a witness to attack credibility by showing a prior conviction may arise. A reading of Hoover v. Denton, Mo., 335 S.W.2d 46, should guide counsel so there will be no reason for error at the time of trial.

Since Dorothy E. Hafley was the person who purchased the 1963 automobile, her husband, Floyd Hafley, would have no interest in the fraud action and his name should be stricken as a party prior to submission of the case.

The judgment of the court in favor of plaintiffs and against defendants on plaintiffs' petition is affirmed. The judgment in favor of plaintiffs and against defendants on the counterclaim is reversed and remanded.

PER CURIAM.

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, the judgment of the court in favor of plaintiffs and against defendants on plaintiffs' petition is affirmed. The judgment in favor of plaintiffs and against defendants on the counterclaim is reversed and remanded.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.